Hon. JAMES BARRETT, ⎫
Hon. HOMER E. ROYCE, ⎬ Assistant Judges.
Hon. JONATHAN ROSS, ⎭

---

### HICKOK v. THAYER.

*Exemption from Attachment. Practice.*

In trover for a horse attached, plaintiff claimed it exempt, and testified, without contradiction, that he and his son bought the horse in the spring of 1871, when they were partners in putting up lightning rods; that they used the horse with another they owned, in carrying lightning rods from place to place, and that in the fall of 1871, he bought his son's interest in the horse, but that they used it in their business during the summer seasons of 1872 and 1873; that at the end of the season of 1873, they closed their business; that his son died in 1874, after which he travelled a little to collect debts, and to put up lightning rods, using the horse then as before; that the horse was used once during the summer of 1874 to draw a load of stone,

once to draw a load of lumber, and was let once to move a man, and that up to the time of the attachment, November 19, 1874, the horse was used to drive single for purposes of business and pleasure. *Held,* that it could not be assumed as matter of law that the horse was not kept and used for team work, and that, as there was evidence tending to show that it was, that question should have been submitted to the jury, and that the court erred in ruling as matter of law that it was not.

TRESPASS for a horse, blanket, and halter. Plea, the general issue, with notice of special matter. Trial by jury, June Term, 1876, WHEELER, J., presiding.

Defendant admitted the taking, and justified the taking of the horse only, under a writ of attachment against plaintiff.

Plaintiff testified that he lived at Fort Edward, New York, and was the owner of the horse, blanket, and halter at the time they were taken by defendant on November 19, 1874, and that he then notified defendant that the horse was his only team, and that he claimed it was exempt from attachment; that he and his son bought the horse in the spring of 1871, to use in the lightning-rod business, in which they were then engaged as partners; that he bought it of the firm in the following fall; that he and his son used it with another horse that was owned by the firm, in the seasons of 1872 and 1873, in their said business, mostly in New Jersey, whither they went in April, and whence they returned in August or September; that it was their custom after the close of the business season, to come home and break up for the winter, and keep their horses for use in the same business the following season; that the firm closed its business in 1873, and that his son died in 1874, but that plaintiff made some collections after that. Plaintiff further testified, that he bought the horse for a business horse, and that it was his only team; that he used it as such in his own private business, and had sold some lightning-rods in his own business, using the horse on a double wagon to carry the rods from place to place; that as surviving partner he had another horse that had belonged to the firm, and that on one occasion in the summer of 1874, he had used the two horses to draw a load of stone; that he had used them once to draw some lumber from Manchester to Fort Edward, and let them once to a man to move with from Arlington to Fort Edward; and that he had, up to the time of the taking in question, used the horse to drive single in a

carriage for purposes of business and pleasure ; that the horse was worth $175, and the one that belonged to the firm, $90.

Upon this testimony, which was uncontradicted, the court held that the horse was not kept and used for team work within the meaning of the statute, and directed a verdict for the value of the blanket and halter only ; to which plaintiff excepted.

*R. Howard* (*Burton & Munson* with him), for plaintiff, cited *Haskill* v. *Andros*, 4 Vt. 609 ; *Freeman* v. *Carpenter*, 10 Vt. 433 ; *Mundell* v. *Hammond*, 40 Vt. 641 ; *Webster* v. *Orne*, 45 Vt. 40 ; *Allen* v. *Thompson*, 45 Vt. 472.

*Miner & Beebe*, for defendant, cited Gen. Sts. c. 47, s. 13 ; Acts of 1866, No. 39, s. 1.

The opinion of the court was delivered by

BARRETT, J. The statute in question in this case should be given effect to according to its true intent and meaning. It should not be enlarged nor diminished in its scope and effect beyond that by judicial construction. When it is said that such statutes should be liberally construed in favor of the debtor, it should not be meant nor understood that the debtor has any more claim to have it extended in his favor to cases that were not contemplated by the Legislature, than the creditor has to have it extended in like manner in his own favor. The province of the court is exhausted when it has made an application of the law to the given case, answerable to the real meaning and intent of the law. Such is the idea in all that has been said on the subject in the cases. " Two horses kept and used for team-work, in lieu of oxen, shall be exempt." One yoke of oxen or steers, without qualification, are exempt. Not so as to horses. In order that they should be exempt, they must be " kept and used for team-work, and such as the debtor may select in lieu of oxen." This last expression, " in lieu of oxen," means, that the debtor cannot have both a yoke of oxen and also horses at the same time exempt. The whole provision is to the effect that while oxen or steers are exempt, without regard to the purpose and use for which they

are kept, horses are only exempt when kept and used for team-work; and in case the debtor has oxen, the horses are not exempted unless the debtor selects them for exemption in lieu of oxen, which, by the fact of such selection of the horses, are excluded from exemption.

"Kept and used for team-work" is the test of exemption, whether the debtor has oxen or not. Such is the language in the opinion of the court by PECK, J., in *Mundell* v. *Hammond,* 40 Vt. 647. *Webster* v. *Orne,* 45 Vt. 40, furnishes an illustration of what is meant by that expression. Prior to a certain time, the owner of the horse had let others drive it on several occasions and drove it a little himself, but how much did not appear. For a few weeks he was in possession of a farm, and within that time he used the horse in the drawing of stumps and stone and drawing up wood. Within ten days from the commencement of such possession the horse was attached. The County Court found and held the use on the farm to be such as is contemplated by the statute as giving exemption, and the Supreme Court affirmed the judgment.

The expression was used in the statute in the ordinary sense, and according to the common understanding of its meaning.

"Team-work" means, work done by a team as a substantial part of a man's business, as in farming, staging, express carrying, drawing of freight, peddling, the transportation of material used or dealt in as a business. This is clearly distinguishable from what is circumstantial to one's business, as a matter of convenience in getting to and from it, or as a means of going from place to place to solicit patronage, or to settle or make collections, or to see persons for business purposes. It is plainly distinguishable from family use and convenience, pleasure, exercise or recreation. None of these uses of a horse are suggested by the expression, "kept and used for team-work." Of course, it is not practicable for the court to specify, in advance, the particular uses which would and would not fall within the expression. When a particular use is shown, practically there would not seem to be much difficulty, ordinarily, in pronouncing whether it falls within the meaning of the expression or not. Occasionally cases may arise which would seem to sit

astride the line of distinction.  When such do arise, they will
have to be disposed of in the most feasible way, having reference
to the law, in its terms and purposes, and to the particular facts
presented.  Though in this case the evidence given looks rather
strongly against the right of exemption, still, we think it cannot
be assumed, as matter of law, that the horse was not "kept for
team-work."  That is for the jury to pass upon in view of the
evidence, under proper instructions   In the case of *Webster* v.
*Orne, supra,* the court recite the evidentiary facts, bearing *pro*
and *con* on the question, and from them, find the ultimate fact on
which the law of exemption takes effect.  If that case had been
tried by jury, that ultimate fact would have been submitted to the
finding of the jury.  In this case there is evidence proper to be
considered in favor of the plaintiff's claim of exemption.  Whether
sufficient to make out the ultimate fact, was addressed to the jury,
and not to the court.  In this respect we think there was error.

No question was made in the County Court on the fact that the
plaintiff was a citizen of New York.  So we do not entertain the
question now made in defendant's argument.

Judgment reversed ;  cause remanded.