## LOCKWOOD *vs.* YOUNGLOVE.

What constitutes a *team*, within the intent and meaning of the statute exempting certain property from sale on execution, must depend very much upon the fact whether it is commonly used, and may be used, as such. It is therefore competent for a party claiming the exemption of a horse to show that he could use, and did use, the animal as a team.

A single horse is a team, within the meaning of the statute, when it is kept and used as such.

If a debtor has but one horse, and hires another to work with it, and the two

make up the team which he usually works, his own horse, if within the prescribed value, is protected.

Although a debtor has necessary household furniture, and working tools, in addition to his team, worth $150, or property of each separate description worth $150, it does not follow that the creditor can take the whole. It is, in such a case, the right of the debtor to determine out of which description of property he claims the exemption.

THIS was an action to recover the possession of personal property. The defendant claimed the same as a purchaser at a sheriff's sale under an execution against John W. Lockwood, the plaintiff in this action. The jury found that the plaintiff was entitled to the possession, and to a return of the property, with six cents damages for detaining the same; and assessed the value of the property at $150. The defendant moved for a new trial.

*Clark Bell,* for the plaintiff.

*B. Bennett,* for the defendant.

*By the Court,* JOHNSON, J. The plaintiff is a householder and entitled to retain such property as the statute exempts, against the claims of his creditors. He was shown to be a farmer, and to follow the business of thrashing. It was also shown that a team in such business is necessary. The case also shows that the team which the plaintiff usually worked consisted of a pair of horses, the horse in question, and another horse, which the plaintiff did not claim to own, but which was claimed to be owned by his wife, as her separate property. Both horses were levied upon by the sheriff and sold, at the same time, and the plaintiff forbid the sale of the horse in question, claiming him as exempt property; but did not forbid the sale of the other horse, which he did not claim to own. The two horses, together, were shown to be worth $250. The horse in question was shown to be worth $125; and the harness, which was also sold, was worth $15. It was also shown that the plaintiff frequently worked the horse in question,

Lockwood *v.* Younglove.

alone, on his farm, and drove him in a buggy, and rode him. It was also shown that a single horse can be used as a team, upon a farm. To this last evidence the defendant's counsel objected, and excepted to the ruling of the court, admitting it. This is the only question which appears to have been raised by the defendant on the trial, except at the close of the case. It was certainly essential for the plaintiff to show that a team was necessary for him, in his business, and it seems to me there can be no valid objection to a party thus situated, showing that he did use, and could use, the animal claimed to be exempt, as a team. What constitutes a team, within the intent and meaning of the statute, must depend very much upon the fact whether it is commonly used, and may be used as such.

It is claimed that the horse in question was not, and could not be, a team. But it has been so repeatedly decided in this court, that a single horse is a team, within the meaning of the statute, when it is kept and used as such, that the question must be regarded as settled. And even had it appeared, clearly, that the plaintiff always used both horses together in his team, and not the one in question separately, I have no doubt, under the circumstances, the horse in question would have been exempt as a team. If a debtor has but one horse and hires another to work with it, and the two make up the team which he usually works, there can be no doubt, I think, that his own horse, which is his interest in the team, if within the prescribed value, is protected. It was claimed however, by the defendant's counsel, upon the argument, that the plaintiff did not show upon the trial that he had not, in addition to articles exempt, prior to the exemption act of 1844, household furniture and tools, of the value of $150. The position now taken is, that before a party can recover for property taken on execution, as exempt property under the act of 1842, he must show that he has not other property which may be exempt under the act, of the value of $150, or some greater or less value. There are two conclusive answers to this position. In the first place, no such question was raised upon the

trial, where it might have been obviated had it been raised. The action seems, from the case, to have been tried throughout upon the assumption that if the horse in question was to be regarded as a team, the plaintiff was entitled to it as exempt property. The case of *Jencks* v. *Smith,* (1 *Comst.* 90,) and the cases there cited, is conclusive upon this point. In the case of *Chambers* v. *Halsted,* (*Lalor's Sup.* 384,) cited by the defendant's counsel, the objection was taken upon the trial.

But in the next place, supposing the plaintiff had had necessary household furniture, and working tools, in addition to the team, worth $150, or property of each separate description worth $150, it would not follow that the creditors could take the whole. It would in such case, I think, be the right of the debtor to determine out of which description of property he would claim the exemption. I am not aware that this question has ever been determined judicially. But where one or more animals or articles of a particular kind, or a particular quantity, in value, out of several kinds, are exempt, and the debtor has a larger number, or quantity in value, as some one must determine which shall be taken and what left, it is but reasonable that the debtor should determine which he will claim as exempt. The statute giving this exemption is for the benefit of families, from motives of public policy, and it has repeatedly been held to confer a personal privilege upon the debtor, the benefit of which he may waive altogether, or insist upon, as he may elect. He may waive his privilege, as to every article but one, and insist upon it as to that article, if it belongs to the kind or class of exempt property. This shows, I think, that the right of choice necessarily belongs to the debtor. The horse in question was claimed by the plaintiff as exempt property, and the sale forbidden on that ground. There was no error in directing the jury to find a verdict. There was no conflict in the evidence, and the defendant's counsel did not ask to have the case submitted, or claim the right to go to the jury upon any question of fact. The general exception to the direction is therefore unavailing. The new matter alleged by

the defendant in his answer is clearly a justification for the original taking of the property, and its subsequent possession by the defendant, and not a counter claim.   But if this were otherwise, it is too late, now, to insist that the plaintiff was concluded by not replying to the answer, as no such question was raised at the trial, and the cause was fully tried upon its merits.   I am of opinion, therefore, that a new trial should be denied.

[CAYUGA GENERAL TERM, June 7, 1858.   *Welles*, *Smith* and *Johnson*, Justices.]