Moseley *v.* Anderson.

E. B. MOSELEY *vs.* JOHN H. ANDERSON.

1. SHERIFF: LEVY UPON EXEMPT PROPERTY: PROCESS UNDER WHICH SHERIFF ACTS, EVIDENCE FOR.—In an action brought against a sheriff, for a levy upon personal property exempt from execution, the record of the suit in which the property was seized, is admissible as evidence to show the authority under which he acted, and to lay the foundation for other proof, that the property so seized was not exempt.

2. EXEMPTION LAWS: EFFECT OF.—The effect of the exemption laws of this State, is to place the property exempted beyond the reach of execution or attachment, except, and only, in those cases specified in the statute. The character or conduct of the owner of the property does not effect the right of exemption.

3. SAME: CASE IN JUDGMENT.—M., for the purpose of delaying and defrauding his creditors, sold all of his property, except that which was exempt from seizure by attachment and execution. Held, that the fraudulent disposition of

Moseley *v.* Anderson.

the property did not affect the right of M. to claim that property which was exempt from seizure by the laws of the State.

4. SLAVES: VALUE OF: "PRETIUM AFFECTIONIS."—The "*pretium affectionis*" is not an element to be considered by the jury in determining the value of a slave.

5. EXEMPTED PROPERTY: SHERIFF: FORMS OF: ACTION AGAINST SHERIFF FOR SEIZURE OF.—When property, exempt from execution or attachment, is levied on, the owner thereof may bring his action of trespass or case for damages, or may sue out his writ of replevin for the recovery of the specific property.

ERROR to Circuit Court of Monroe county.    Hon. J. M. Acker, Judge.

The opinion of the court recites the facts of the case.

*F. M. Rogers* and *D. W. Sadler*, for plaintiff in error, cited following authorities, as to the form of the action : 7 Johnson, 140 ; 1 California R. 160 ; 10 B. Monroe, 33 ; 24 Vermont R. 371 ; 1 Dallas, 150 ; 1 Wend. R. 109 ; 8 Barbour, 213 ; 23 Barbour, 240 ; 10 Wend. 349 ; 15 Mass. R. 359 ; 16 Mass. 147 ; 34 Miss. 385, 410 ; 4 Greenleaf's R. 306 ; 22 Penn. 168 ; 15 Barbour, 273, 568 ; 3 Wend. 274 ; 2 A. K. Marshall, 261, 661 ; 20 Ala. 212 ; 12 B. Monroe, 51.

*Dowd* and *Sykes*, for defendant in error, contended,

1. That when a statute makes innovations upon the established principles of the common law, it is to be strictly pursued. 16 Johns. 7 ; 5 Denio, 119 ; 2 Gilmer R. 184, 429 ; 4 Binney, 116 ; Mass. 471 ; 9 Pick. 496 ; 3 Stew. and Port. (Ala.) 13 ; 2 Humph. 320.

2. That the intention of the legislature must always control in the construction of a statute.    2 Cranch, 10 ; 5 Tenn. R. 449 ; 3 Cowen, 89 ; 12 Johns. 176 ; 4 Cushing, 314 ; 2 Peters, 662 ; 21 Wend. 211.

3. That the intention of the legislature is to be gathered from the language used, in connection with the subject-matter and purpose of the law.    19 Conn. R. 292 ; 19 Vermont R. 131 ; 21 Vermont R.      ; 3 Missouri, 496 ; 25 Maine R. 493.

4. That the intention of the legislature may be deduced from arguments founded on the hardship of the law, 9 Cranch, 203 : from the history and situation of the country at the time

Moseley *v.* Anderson.

of the passage of the law, '1 Wheaton R. 115; 17 Vermont, 479: from the reason and spirit of the law, 15 Johnson's R. 358; 3 A. K. Marshall, 489; 4 Comstock's R. 140: and from the absurd consequences that may flow from a particular construction, 2 Cranch, 358; 3 Mass. R. 215; 7 Mass. R. 306; 2 Mass. R. 475; 3 Scammon's R. 153.

5. That a statute should never be expounded so as to destroy natural justice, and become a mere engine of wrong. Dwanis on Statutes, 726; 7 Johns. 495, 496.

6. That a fraud upon, or evasion of a statute, will, under no circumstances, be tolerated. 9 Johns. 356; 10 Ib. 461; 15 Ib. 510.

7. That the remedy was an action for damages, and not replevin.

Where a statute creates a right, or defines a wrong, which had no existence at common law, and prescribes a remedy to enforce the one or redress the other, no action will lie, but that provided by statute. 23 Pick. 36; 3 Metcalf, (Ky.) 380; 1 Ib. 150, 553; 2 Ib. 599; 13 Barbour, N. Y. 209; 32 Maine, 553; 5 Johns. R. 175; 1 Blackford R. 405; 7 Hill's N. Y. R. 575.

ELLETT, J., delivered the opinion of the Court.

The plaintiff in error, on the third day of February, 1860, sued out a writ of replevin under the statute, to recover of the defendant a female slave named Frances.

It appeared on the trial of the cause that, on the fourth of February, 1859, Gates and Pleasants had brought a suit by attachment against Moseley, which was levied on the said slave, and that Moseley had made an affidavit that she was the slave "which he claimed and held as allowed to him by law, exempt and free from execution or distress, and that he held no other slave under such claim or right;" and had also given bond to prosecute his claim with effect, and that thereupon the officer had restored the said slave to his possession. Final judgment was rendered against the defendant in the attachment suit, at May Term, 1859; and at the following term, in December, 1859, the court, on motion of the plaintiff, dismissed the said

claim, quashed the bond, and ordered the slave to be sold to satisfy the judgment. A writ of *renditioni exponas* was thereupon issued, and placed in the hands of the defendant, Anderson, the sheriff of Monroe county, who, by his deputy, seized the said slave for the purpose of sale, and Moseley then brought this action of replevin.

On the trial the plaintiff proved his title to the slave, his claim to hold her exempt from execution or attachment, her value and her detention by the defendant. His counsel asked a witness "if, at the time she was levied on, she was of peculiar value to the plaintiff." This question was objected to, the objection sustained, and an exception taken.

The defendant offered in evidence the record of all the proceedings in the attachment suit, which was objected to by plaintiff, but the objection was overruled, the evidence admitted, and an exception taken.

He also offered proof to the effect that, on the second day of February, 1859, two days before the attachment was issued, the plaintiff was the owner of twelve or fourteen other slaves, besides the one in controversy, and that on that day he had made a bill of sale of them to his son-in-law, who carried them in the night time to the State of Alabama, and there sold them, and brought back the money and paid it to the plaintiff; that the plaintiff was then embarrassed by debt, and that he had stated that his object in disposing of his other slaves in the manner set forth, was to avoid the payment of a debt to a bank in South Carolina, for which he was bound as surety. The plaintiff objected to this evidence, but the objection was overruled, the evidence received, and an exception taken.

Several instructions were given to the jury, at the instance of the plaintiff, upon which it is unnecessary to remark. The following instructions were given in behalf of the defendant:

1. That at common law all property was liable to execution, and if the jury believe from the testimony that Moseley was the owner and in the possession of twelve or thirteen negroes but three or four days before the attachment in favor of Gates and Pleasants was sued out and levied on Frances, and that in fraud of

the exemption law, and with intent to hinder, delay and defraud his creditors, (he) made a pretended sale of all his other negroes, except the one in controversy, to his son-in-law, and that said slaves were run of in the night-time to another State, and there sold them and received the money, the proceeds of the sale of said negroes, from his creditors in fraud of their rights, such a case is not within the spirit of the exemption law, and the jury will find for the defendant.

2. That if the jury believe from the testimony that Moseley was in the possession and the owner of twelve or thirteen negroes, about the second of February, 1859, and that the sale to his son-in-law, Thompson, was merely colorable, and merely designed to enable him to run them off to defraud his creditors, then the slaves remained the property of Moseley as to his creditors until they were sold *bonâ fide* in South Alabama; and if the jury believe from the testimony that the negroes so run off were not sold by Thompson, in Alabama, until after the levy of the attachment in this cause, on the fourth of February, 1859, then the plaintiff Moseley cannot claim the slave Frances under the exemption law, and the jury must find for the defendant.

3. That fraud may be inferred from facts and circumstances, and one fact, coupled with other facts and corroborating circumstances, from which fraud may be inferred, is the relationship of the contracting parties.

All which instructions were excepted to by the plaintiff.

The court also remarked from the Bench, in the presence of the jury, that he would charge the jury that the statute, exempting one negro from execution, was alone for the benefit of insolvent persons, and not for the benefit of those persons who had money or other property, but that now that charge was not necessary, and he would not give it. To which opinion of the court the plaintiff excepted.

The jury having found a verdict for the defendant, the plaintiff moved for a new trial on all the grounds covered by the foregoing exceptions, and took a bill of exceptions to the judgment of the court overruling said motion.

In the consideration of the case it may be remarked, in the first place, that the record in the attachment suit was competent evidence for the defendant, to show the authority under which he professed to act, and to lay the foundation for other legal proof that the slave in controversy was not exempt from seizure under the process. It may have been unnecessary to embrace in the transcript the voluminous proceedings against the garnishers, but their incorporation furnishes no ground for its exclusion as testimony.

Whether the other evidence offered in connection with this record, to justify the detention of the slave sued for, was sufficient, or even admissible for that purpose, is a different question. The statutory provision, exempting certain personal and real property from liability to be taken by legal process for the payment of debts, is very plain and explicit. It declares in the most comprehensive terms that the property therein enumerated "shall be exempt from seizure under execution or attachment." Rev. Code, 528, article 280. And among the property belonging to the "head of a family or housekeeper," so declared exempt, is "one slave, to be selected by the debtor if he have more than one." The exemption is absolute and unqualified, and its effect is to remove the property beyond the reach of legal process, except in the cases and under the circumstances specified in article 284 of the same act. This exemption is granted without reference to the merit or demerit of the debtor. It is founded upon a policy that has no relation to the character or conduct of parties claiming the benefit of it. It is the interest of the State that no citizen should be stripped of the implements necessary to enable him to carry on his usual employment, and that families should not be made paupers or beggars, or be deprived of shelter and reasonable comforts, in consequence of the follies, the vices, or the crimes of their head. The right to enjoy the benefit of the exemption does not in any manner depend upon the question whether the party is solvent or insolvent, whether he possesses other slaves or other property or not, or whether he has or has not made a' fraudulent disposition of other property with intent to hinder

and delay his creditors. The statute make no such exceptions, and it is not for the court to engraft them upon it. It follows from these views that the evidence given by the defendant on the subject of the ownership of other negroes by the plaintiff, and the disposition made of them, was irrelevant and inadmissible, and that the first, second, and third instructions given on behalf of the defendant were erroneous. The third announced a very plain legal proposition, but was inapplicable to any question properly before the court. The remark made by the judge in the presence of the jury as to the instruction which he would give, if it were not unnecessary, can only be regarded as an additional instruction actually given to the jury, and was likewise erroneous.

The question put by plaintiff's counsel to one of his witnesses, whether, at the time she was levied on, the slave was of peculiar value to the plaintiff, was properly disallowed. The *pretium affectionis* was not a proper element to be considered by the jury in estimating the value of the slave.

It is insisted in argument for defendant in error, that the form of the action is misconceived in this case; that the action of trespass or case is expressly given by the statute as the remedy against the sheriff for seizing property exempt from execution, and, therefore, that replevin cannot be maintained, and that the judgment ought not to be reversed for any errors heretofore committed, because the same result must follow another trial, on account of this error in the form of the action.

It is true the statute (Rev. Code, 529) makes any sheriff or officer who shall levy on or seize any property exempt from execution, liable to an action of trespass, or on the case, at the suit of the debtor, for all damages sustained thereby; but, by another provision of the Code (page 395), the action of replevin, for the recovery of the property itself, is given to the party aggrieved in all cases, "whenever any goods or chattels are, or shall be, wrongfully taken or detained." There being no exclusive words in either act, it is better to hold that the legislature intended to give the party the choice of any of these remedies. The action of trespass, or on the case, would

have been maintainable at the common law, in this class of cases, without any legislation on the subject; but the authorities are conflicting whether the proper technical form of action was trespass or case, and it is not unlikely that this provision, in favor of either of them, was inserted to obviate such questions, and to prevent parties from being turned round upon the form of the action. At all events, we think the party is entitled to his action of replevin to regain the specific property, and is not compelled to resort in all cases to the action of trespass, or case, to recover damages.

The judgment will be reversed, and the cause remanded.