[No. 1,074.]

GEORGE  S.  ELDER,  RESPONDENT,  v.  J.  T.  WILL-
IAMS, APPELLANT.

PROPERTY EXEMPT FROM EXECUTION—TEAMSTER.—The court instructed
    the jury that, "To be a teamster, within the meaning of the law and of
    the statute concerning exemptions, a man need not necessarily drive his
    team. In the sense of the statute one is a teamster who is engaged with
    his own team or teams in the business of teaming; that is to say, in the
    business of hauling freight for other parties for a consideration, by which
    he habitually supports himself and family—if he has one:" *Held*, cor-
    rect.

IDEM—SELECTION OF PROPERTY.—The court instructed the jury that, "If a
    teamster owns more than one team, that is, if he owns more than two
    horses or mules, and their necessary harness and equipments, and more
    than one wagon, it is his right and privilege under the law to select and
    designate two animals and their harness, etc., and one wagon, *suitable for
    use* therewith, or with two animals, as his exempt property, and when
    so selected and pointed out, the law will recognize and protect them as
    his exempt property, provided they were actually in use by such team-
    ster in his business of teaming, by which he earned his living at the
    time of the levy by an officer; and such selection may be made without
    regard to the value or quality of the property selected:" *Held*, correct.

FRAUDULENT CONCEALMENT OF OTHER PROPERTY—NOT DEPRIVATION OF RIGHTS UNDER EXEMPTION LAWS.—If plaintiff fraudulently concealed other property and refused to surrender the same in execution, equal in amount to the value of the property claimed as exempt, that fact does not deprive him of an otherwise valid claim of exemption.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*R. M. Clarke,* for Appellant-

I. The statute exempting "two horses and a wagon," etc., is not of general and universal, but special and limited application. It does not apply to all persons, but to teamsters only; not even to all teamsters, but to such teamster only as habitually earns his living by using a team. (1 Comp. L. 1282, par. 6.)

II. No person is a teamster within the sense of the law who does not: First, habitually drive a team; and second, by driving a team habitually earn a living. (*Brusie* v. *Griffith,* 34 Cal. 306; *Abercrombie* v. *Alderson,* 9 Ala. 985; *Richie* v. *McCaulay,* 4 Pa. St. 472.) By "teamster" is meant not one who can drive or has driven, but who does drive a team. (Webster's Dict. 1358; 2 Bouv. Law Dict. 572.) The exemption lies in favor of the individual and business, not the individual alone, or the business alone.

III. The statute does not generally or in all cases exempt a team to a teamster but exempts the team by the use of which the teamster habitually earns his living. (*Corp* v. *Griswold,* 27 Iowa, 379.)

IV. It is not two horses and a wagon generally which the law exempts, but the particular two horses and wagon used by the teamster in teaming, and by the use of which in teaming the teamster habitually earns his living. (*Corp* v. *Griswold,* 27 Iowa, 379, 381.) The property must be suitable. (*Ames* v. *Martin,* 6 Wisc. 361; *Favers* v. *Glass,* 22 Ala. 624; *Smith* v. *Gibbs,* 6 Gray, 298.)

V. One who fraudulently conceals or refuses to surrender his property can not claim the benefit of the exemption

law. (*Strouse's Ex'r* v. *Becker,* 38 Pa. St. 190; *Emerson* v. *Smith,* 51 Id. 90; 21 Wend. 68.)

*Trenmor Coffin,* for Respondent.

I. A fraudulent concealment of property subject to execution is not in prejudice of an otherwise valid claim of exemption. (Thomp. on Homesteads and Ex., secs. 430–436; Smythe on Homesteads and Ex., sec. 432, *et seq.; O'Donnell* v. *Segar,* 25 Mich. 376.)

II. The instructions given by the court are according to sound reason and are supported by all the authorities. (*Seamon* v. *Luce,* 23 Barb. 240; *Lockwood* v. *Younglove,* 27 Barb. 505; *Finnin* v. *Malloy,* 33 N. Y. 390; *Borland* v. *O'Neal,* 22 Cal. 504; *Brusie* v. *Griffith,* 34 Cal. 302; Thomp. on Homesteads and Ex., secs. 773, 774; Smythe on Homesteads and Ex., sec. 578.)

III. The statute concerning exemptions must be construed liberally and so as to give effect to its spirit and intention in all cases. (*Bevan* v. *Heyden,* 13 Iowa, 125; *Rogers* v. *Ferguson,* 32 Tex. 534; *Gilman* v. *Williams,* 7 Wisc. 337; *Stewart* v. *Brown,* 37 N. Y. 351.)

By the Court, LEONARD, C. J.:

This action is to recover a wagon and two horses, which defendant, as sheriff, seized under various writs of attachment and execution against the property of plaintiff, and which the latter claims as exempt from levy and sale under execution, for the reason that he is a teamster, and by the use of which he habitually earns his living.

Respondent recovered judgment, and appellant moved for a new trial, on the grounds of errors in law occurring at the trial, excepted to by the defendant, and insufficiency of the evidence to justify the verdict. This appeal is taken from the judgment and from the order denying a new trial. Section 1282 of the compiled laws provides as follows: "The following property shall be exempt from execution, except as herein otherwise specially provided:    *    *    * Sixth—Two oxen, two horses, or two mules and their harness, and one cart or wagon, by the use of which a cartman,

huckster, peddler, teamster or other laborer habitually earns his living."

Counsel for appellant claims that the verdict and judgment and the order denying a new trial are erroneous for the following reasons:

"I. Plaintiff was not a teamster, and, therefore, not entitled to the exemption.

"II. Plaintiff did not habitually earn his living by use of the horses and wagon in question.

"III. The wagon is not a two-horse wagon, or such as is comtemplated by the statute; nor is it adapted to the use which the statute contemplates.

"IV. Plaintiff fraudulently concealed his property and refused to surrender the same in execution."

1. In the statutory sense, is plaintiff a teamster?

It is said that he is not, because he *did not habitually drive* a team, and because he did not earn his living by habitually driving a team.

The court instructed the jury that, "To be a teamster, within the meaning of the law and of the statute concerning exemptions, a man need not necessarily drive his team. In the sense of the statute one is a teamster who is engaged with his own team or teams in the business of teaming; that is to say, in the business of hauling freight for other parties for a consideration, by which he habitually supports himself and family—if he has one." We think the instruction is correct. In commenting upon this instruction the court said: "One need not hold the reins and guide the team to be a teamster. One who makes his living by teaming, giving his personal attention to it, is a teamster. To hold otherwise is to say that a successful teamster is not entitled to invest his gains and surplus earnings in that business with which he is best acquainted, and thus increase his facilities, without losing the protection otherwise given his original ' plant.'"

In *Brusie* v. *Griffith,* 34 Cal. 306, the court said: "In common speech a teamster is one who drives a team, but in the sense of the statute every one who drives a team is not necessarily a teamster; nor is he necessarily not a teamster,

unless he drives a team continually. In the sense of the statute one is a teamster who is engaged with his own team or teams in the business of teaming—that is to say, in the business of hauling freight for other parties for a consideration, by which he habitually supports himself and family, if he has one. While he need not, perhaps, drive his team in person, yet he must be personally engaged in the business habitually, and for the purpose of making a living by that business."

The court's definition of a teamster was correct, and according to that, under the testimony, plaintiff was a teamster.

2. Did plaintiff habitually earn his living by the use of the property in question? It was a part of a large number of horses, harnesses, and wagons which he had for a long time used in teaming, as a teamster, and by which he made his living and that of his family. The court instructed the jury that, "If a teamster owns more than one team, that is, if he owns more than two horses or mules, and their necessary harness and equipments, and more than one wagon, it is his right and privilege under the law to select and designate two animals and their harness, etc., and one wagon, *suitable for use* therewith, or with two animals, as his exempt property, and when so selected and pointed out, the law will recognize and protect them as his exempt property, provided they were actually in use by such teamster in his business of teaming, by which he earned his living at the time of the levy by an officer; and such selection may be made without regard to the value or quality of the property selected."

That instruction is absolutely without fault, and under it and the third instruction given for plaintiff, the jury must have found, from the evidence, that he was a teamster at the time of the levy, and that the property in question was in actual use by him in the business by which he earned his living. The testimony is ample to sustain the verdict upon this point. It was just as necessary that plaintiff should be allowed two horses, with their harness, and one wagon, for

the support of his family, as it would have been if he had owned only the exempt property:

The statute exempts *all* the farming utensils or implements of husbandry of the judgment debtor, but only *two* horses or *two* oxen or *two* mules and their harness, and two cows and one cart or wagon, regardless of the number of horses, oxen, etc., that he may have. So it exempts two oxen, two horses, or two mules, and their harness, and one cart or wagon, which he habitually uses in teaming, if by that business he earns his living, regardless of the number that he may have in use. He may select any of the horses so used and any wagon that is suitable for use with them in his business.

3. Was the wagon in question such as is contemplated by the statute? Under the court's instructions, the jury must have found that it was. They were told that the wagon must be suitable for use with the two animals selected. If we admit that there was no conflict of testimony, that the wagon could not, for the reasons given, be profitably employed with the two horses in teaming between Carson and Bodie, still, all or nearly all of the witnesses who testified upon the point, stated that it could be so used in and around Carson; and that by its use, with the two horses, plaintiff could make a living by teaming. We think there is ample testimony to sustain the verdict upon this point.

4. Defendant alleged in his answer that, at the time he levied on the property in question, plaintiff owned and had, and now owns and has, in his possession and control other property subject to attachment and execution, which he wrongfully and fraudulently failed and fails to produce in lieu of the property in dispute; that during all the times mentioned in his complaint, plaintiff has fraudulently concealed and retained, and still conceals and retains, wrongfully and fraudulently, a large amount of property subject to attachment and execution, for the purpose of hindering, delaying, and defrauding *bona fide* creditors; and that defendant knew of said fraudulent conduct when plaintiff demanded the property in question, and when he levied upon it. This portion of the answer was demurred to by plaint-

iff, and the demurrer was sustained on the grounds, first, that the attempted allegations of fraud were entirely insufficient, for the reason that there were no allegations of fact, and that no description of property so concealed was attempted; and second, that a fraudulent concealment of property subject to execution is not in prejudice of an otherwise valid claim of exemption. At the trial defendant offered to prove that, shortly before his failure, plaintiff gave to a party in Bodie his promissory note for several thousand dollars, in excess of what he owed, for the purpose of defrauding his creditors; and that for the same purpose, shortly after his failure, he sold about four thousand dollars worth of hay, his own property, in this state; took the money realized from the sale to Bodie, California, buried it in the ground, and never delivered up any part of it to his creditors. Objection to this testimony was sustained on the ground of incompetency and immateriality. If it is true that a fraudulent concealment of property subject to execution, does not prejudice an otherwise valid claim of exemption, then the court did not err in sustaining the demurrer, regardless of the question of the sufficiency or insufficiency of defendant's answer, in his attempted charge of fraudulent concealment, and if the demurrer was properly sustained, there was no error in refusing to permit the offered proof, because there were no pleadings upon the subject, and too, because such evidence would have been immaterial.

This question then is presented: If plaintiff fraudulently concealed property and refused to surrender the same in execution, equal in amount to the value of property claimed as exempt, does that fact deprive him of an otherwise valid claim of exemption ? The authorities are somewhat conflicting. Those holding in the affirmative are confined mostly to the courts of Pennsylvania; while the opposite view is sustained by the courts of North Carolina, Alabama, Mississippi, Missouri, New York, Michigan, and, if we mistake not, Ohio.

As to the property mentioned in the statute as exempt, only one exception is stated, and that is that no article or species of property mentioned in the section shall be exempt

from execution issued upon a judgment recovered for its price, or upon a mortgage thereon. The constitution provides that, "the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for payment of any debts or liabilities hereafter contracted." (Const. art. I, sec. 14.).

The statute was undoubtedly passed in compliance with the constitutional requirement. Since the statute declares that the plaintiff is entitled to hold the property in suit as exempt from execution, except in the one case stated, what right have courts to engraft upon the statute another exception? It is provided that one sewing-machine not exceeding in value one hundred and fifty dollars, in actual use by the debtor, or his family, shall be exempt. All other sewing-machines may be sold. He is allowed to retain one that is in actual use, because it is the policy of the constitution and law, and the interest of the state, that no citizen shall be stripped of the implements necessary to enable him to enjoy the necessary comforts of life and to carry on his his usual employment; and that, if he has one, his family shall not be made paupers or beggars in consequence of the follies, the vices, or the crimes of their head. (*Moseley* v. *Anderson*, 40 Miss. 54; *Wilcox* v. *Hawley et al.*, 31 N. Y. 657.)

It is true that in New York and Mississippi the exemption was granted to the "head of a family," while our statute gives the exemption in most instances regardless of family relations. But this difference, we think, does not change the result. It is still true, under our statute, as was said in *Moseley* v. *Anderson*, that the exemption is absolute and unqualified, and its effect is to remove the property beyond the reach of legal process, except in the one case mentioned. The tools and implements of a mechanic, necessary to carry on his trade; the instruments and chests of a surgeon, physician, surveyor, and dentist, necessary to the exercise of their profession; the libraries of an attorney and minister; the implements and appliances of a miner, necessary for carrying on any kind of mining operations, not exceeding five

hundred dollars in value, and two horses, mules, or oxen, with their harness, and food for them for one month, when necessary to be used for any whim, windlass, derrick, car, pump, or hoisting apparatus, are all declared absolutely exempt, except upon a judgment for their price. In the case of a miner, the horses, etc., and their food, are not exempt, except when the former are *necessary to be used* in mining operations. And in the case of a teamster, the two horses, their harness, and one cart or wagon mentioned, are not exempt unless by their use he habitually earns his living. From these different provisions, we think the legislature did not intend to deprive the debtor of his means of obtaining a livelihood for himself, or his family, or both.

In *Megehe* v. *Draper*, 21 Mo. 511, the defense relied on by the defendant was that, at the time of the levy, the plaintiff had other property not specially exempt from execution more than sufficient in value to pay the debt, which he concealed from the officer, so as to keep it out of the reach of the execution. Upon the plaintiff's motion, this part of the answer was stricken out, and the defendant excepted. The court said: " The only matter for our consideration involves the act of the court below in rejecting the evidence, on the trial, and in striking out the answer, or that part of the answer setting up the above matters in defense. If the court properly struck out that part of the answer, then it was proper also to reject the evidence in relation to the same subject-matter.

This court is of opinion that the matter set up in the defendant's answer was well stricken out. It affords no defense to the plaintiff's action. The statutes reserving and exempting certain specific property from execution * * * to a certain amount in value, were not made alone for the benefit of the debtor. He must be the head of a family. The legislature had an eye to the family of the debtor, to his household, and determined to prevent as much suffering and misery from entering into such abodes as they could, by saving to them the small allowance mentioned in the statutes. These statutes, so productive of good to

the classes which generally so much need protection, deserve and meet with liberal interpretation from the courts."

It will be noticed that the Missouri statutes also limit exemptions to "heads of families," and that fact is referred to by the court, as evidence to sustain the proposition that one of the objects of the law was to protect the family. And so it is. But is it any proof that our legislature did not intend to protect the families of debtors because the statute includes single persons as well as those with families? The latter class is certainly included, and as to them, it is as reasonable to presume, under the statute as it is written, that one of the objects of exemption was to protect their families, as it would have been, if persons without families had not been included among the beneficiaries. But in North Carolina, the exemption is general, as it is in this state. The constitution of that state declares that "the personal property of any resident of this state, to the value of five hundred dollars, to be selected by such resident, shall be, and is hereby exempted from sale under execution, or other final process of any court, issued for the collection of any debt." There is also a general constitutional provision exempting a homestead of the value of one thousand dollars, owned and occupied by any resident of the state. The case of *Duvall* v. *Rollins*, 68 N. C. 220, involved the question of personal property exemption.

The case again came before the court on petition for a rehearing (71 N. C. 221), and the court say: "The personal property exemption can not be reached by execution at all, for as to that, under the constitution, there can be no creditor and no forfeiture by any attempt to make a fraudulent conveyance.

"Our laws have long been so framed as to make fraudulent conveyances void as to creditors, and our habits of thinking run in the same direction, so that it is difficult to realize that another and a new right has been interposed between the creditor and debtor which secures certain of his property, even from his own fraud upon creditors."

And in *Crummen* v. *Bennet*, 68 N. C., 495, this language is used: "A. makes a conveyance of his land to B., which

conveyance is fraudulent and void as to the creditors of A. A creditor takes judgment and issues execution, treating the conveyance of B. as void; can the homestead of A. be sold? The creditor treats the conveyance to B. as void and of no effect. Take that to be so; how can the creditor have any more right against A. than he would have had if the conveyance had not been made? We can see no ground to support the position that an attempt to commit a fraud is a forfeiture of the debtor's homestead; there is no provision of the kind either in the constitution or the statutes. The only legal consequence of a deed with an intent to defraud creditors is, that although valid as between the parties, it is void as to creditors.

"In this case, the fraud did not consist in conveying the homestead; for the creditor could not have reached that by his execution, had the debtor retained his homestead; but the fraud was in conveying the other part of the land. That the creditor can reach by his execution. As to the homestead he has no concern; that matter will rest between the fraudulent donor and donee." (See, also, *O'Donnell* v. *Segar*, 25 Mich. 376; *Callaway* v. *Carpenter*, 10 Ala. 503; *Lockwood* v. *Younglove*, 27 Barb. 508.)

*Bracket* v. *Watkins*, 21 Wend. 69, cited by counsel for appellant, has been overruled by *Wilcox* v. *Hawley*, 31 N. Y. 657. We do not think the court erred in sustaining the demurrer or in rejecting the offered evidence.

The judgment and order appealed from are affirmed.