# SUPREME COURT

OF THE

STATE OF NEVADA.

## JULY TERM, 1885.

[No. 1197.]

EZEKIEL EDGECOMB, RESPONDENT, *v.* HIS CREDITORS, APPELLANTS.

APPEAL—SEVERAL ORDERS—ONE SUBJECT—UNDERTAKING ON APPEAL.—An appeal was taken from several different orders, all relating to the question whether certain property was exempt from execution, and but one undertaking was given: *Held*, that the several orders must be treated and considered as one order upon the question involved, requiring but one undertaking to perfect the appeal.

EXECUTION—EXEMPT PROPERTY—OTHER LABORER—LIVERY-STABLE KEEPER —STATUTE.—In construing the statute of exemptions (1 Comp. Laws, 1282): *Held*, that the business of a livery-stable keeper is plainly distinguishable from that in which cartmen, hucksters, peddlers, or teamsters are engaged, and that a livery-stable keeper is not "another laborer," within the meaning of that term as used in the statute exempting property from execution. (Leonard, J., dissenting.)

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*Trenmor 'Coffin* and *James D. Torreyson,* for Appellants:

I. It cannot be inferred that a livery stable-keeper, so different and distinct in business and occupation from the classes specified in the statute, was intended to be covered by the general words, "or other laborer." (*City of St. Louis* v. *Laughlin,* 49 Mo. 562; *Grumley* v. *Webb,* 44 Mo. 444; Sedg. on Stat. and Cons. 360, note a; *State* v. *McGarry,* 21 Wis. 496; *White* v. *Ivey,* 34 Ga. 198; *Brusie* v. *Griffith,* 34 Cal. 307;[1] *U. S.* v. *Irwin,* 5 McLean, 184; *McIntyre* v. *Ingraham,* 35 Miss. 25; 1 Abb. Law Dic. 418; 1 Bouv. Law Dic. 460; *Rawlings* v. *Jennings,* 13 Ves. 46; *Hotham* v. *Sutton,* 15 Ves. 320; *Sandiman* v. *Breach,* 7 Barn. & Cres. 96; *Williams* v. *Golding,* 1 Law Rep. C. P. 73–78; *Calhoun* v. *Knight,* 10 Cal. 393; *Dove* v. *Nunan,* 62 Cal. 399; *Burgess* v. *Everett,* 9 Ohio Stat. 425; *Abercrombie* v. *Alderson,* 9 Ala. 985; *Corp* v. *Griswold,* 27 Iowa, 379.)

II. Even conceding that Edgecomb might be held to be one of the persons mentioned in subdivision six, 1 Comp. L. 1282, the close carriage claimed as exempt is not of the class of property mentioned in the statute. (*Quigley* v. *Gorham,* 5 Cal. 418;[2] *Favors* v. *Glass,* 22 Ala. 624;[3] *Gordon* v. *Shields,* 7 Kan. 320; *Ames* v. *Martin,* 6 Wis. 361;[4] *Robert* v. *Adams,* 38 Cal. 383;[5] *Elder* v. *Williams,* 16 Nev. 420.)

*A. C. Ellis,* for Respondent:

I. The appeal should be dismissed because there is only one notice of appeal, one undertaking on appeal, one statement on appeal, and one transcript; and an attempt is made to appeal from several separate and distinct orders. (*White* v. *Appleton,* 14 Wis. 193; *People* v. *Center,* 61 Cal. 194; *Skidmore* v. *Davies,* 10 Paige, 317; *Sweet* v. *Mitchell,* 17 Wis. 125; Hayne on N. T. & A. 644–6.)

II. The property in question is exempt from execution, and was properly set apart by the court. (1 Comp. Laws, 1282; *Wilcox* v. *Hawley,* 31 N. Y. 648; *Stewart* v. *Brown,* 37 N. Y. 351;

---

1   91 Am. Dec. 695.        2   63 Am. Dec. 139.        8   58 Am. Dec. 272.
    4   70 Am. Dec. 723.                 5   99 Am. Dec. 413.

*Mosely* v. *Anderson*, 40 Miss. 54; *Gillman* v. *Williams*, 7 Wis. 337;[1] *Rodgers* v. *Ferguson*, 32 Tex..533; *Nichols* v. *Claiborne*, 39 Tex. 363; *Bevan* v. *Hayden*, 13 Iowa, 125; *Stewart* v. *Welton*, 32 Mich. 56; Thomp. on Hom. & Ex. 734, 760, 805, 870, 873; *Brusie* v. *Griffith*, 34 Cal. 302; *Forsyth* v. *Bower*, 54 Cal. 639; *Dove* v. *Nunan*, 62 Cal. 400.)

By the Court, HAWLEY, J.:

The appeal in this case is taken "from an *ex parte* order made in said matter on the eighth day of March, A. D. 1884, by the judge of said court, setting apart for the use and benefit of said insolvent and his family, as exempt from execution, two gray horses and their harness, and one close carriage; and also * * * from two certain orders made * * * on the thirty-first day of May, A. D. 1884, finally exempting and setting apart said horses, harness, and carriage for the benefit of said insolvent and his family, as exempt from execution; and denying said creditors' motion to vacate and set aside said *ex parte* order, and sustaining said insolvent's demurrer to said creditors' motion, and denying so much of said assignee's petition for authority to sell the property of said insolvent as prayed for authority to sell said two gray horses and their harness, and said close carriage."

Respondent moves to dismiss this appeal on the ground that it is taken from several different orders, and there is but one undertaking on appeal. This motion must be denied. It was not necessary to specify all the orders and rulings of the court declaring that the property in question was exempt from execution. An appeal from the order made on the thirty-first of May, finally exempting and setting apart said horses, harness, and carriage, would have been sufficient to present the only question involved in this appeal. But the fact that all the rulings of the court upon this question were inserted in the notice of appeal (including some orders that were not appealable) does not change the character of the appeal. All the orders relate to the question whether the property specified is or is not exempt from execution, and they must be treated and considered as one order upon that subject, requiring but one undertaking to perfect the appeal. The record shows: "That said Ezekiel Edgecomb is, and for more than twenty years last past has been, a livery-stable keeper, and for many years prior

1  76 Am. Dec. 219.

to the filing of his said petition was engaged in the business of keeping a livery-stable in Carson City, Nevada; that during all of said time he kept numerous horses, carriages, buggies, and other vehicles of his own, suitable for carrying passengers and pleasure-seekers, for the purpose of hiring them or letting them to the public, and also cared for and stabled numerous horses for other persons; that during said time said Edgecomb has frequently and habitually used said close carriage, and said horses, and their harness, by using and driving them in person for the purpose of carrying persons about the city of Carson, for the purpose of making social visits and calls, and for the purpose of carrying persons to and from funerals and weddings, and for the purpose of carrying persons to and from all kinds of social gatherings, theaters, concerts, and to and from the railroad depot with light baggage; and that he appropriated the proceeds of such labor and earnings by and with said horses and vehicle to the support of himself and family, and thereby habitually earned a part of his living for himself and family."

The statute, under which respondent's claim of exception is based, reads as follows: "The following property shall be exempt from execution: * * * two oxen, two horses, or two mules, and their harness, and one cart or wagon, by the use of which a cartman, huckster, peddler, teamster, or other laborer habitually earns his living." (1 Comp. L. 1282.)

Is respondent an "other laborer" within the meaning of that term as used in the statute? The legislature evidently intended that the construction to be given to these words should be confined to other laborers *ejusdem generis* with those named. Language, however general in its form, when used in connection with a particular subject-matter, must be presumed to be used in subordination to that matter, and should be construed and limited accordingly. It is not pretended that respondent comes within any class named in the statute. In order to be entitled to the benefits of the exemption law, he must, therefore, show that he was engaged in some business in which, by the use of his horses, harness, and carriage, he habitually earned his living. He has failed to do so. The record shows that his business was that of a livery-stable keeper, which is plainly distinguishable from that in which cartmen, hucksters, peddlers, or teamsters are engaged. If the legislature had intended to include livery-stable keepers, that class would

certainly have been named in the statute, as they are as well known, and of an equal or superior class to those named. It is evident that the words "other laborer" were not intended to include the business of livery-stable keepers.

A livery-stable keeper is not a teamster, or entitled to the exemptions of a teamster, simply because he drives his own team in carrying persons around town. Yet, "in common speech, a teamster is one who drives a team; but, in the sense of the statute, every one who drives a team is not necessarily a teamster, nor is he necessarily not a teamster, unless he drives a team continually. In the sense of the statute, one is a teamster who is engaged with his own team or teams in the business of teaming; that is to say, in the business of hauling freight for other parties, for a consideration, by which he habitually supports himself and family, if he has one. While he need not, perhaps, drive his team in person, yet he must be personally engaged in the business of teaming habitually, and for the purpose of making a living by that business. If a carpenter, or other mechanic, who occupies his time in labor at his trade, purchases a team or teams, and also carries on the business of teaming by the employment of others, he does not thereby become a teamster in the sense of the statute. So of the miner, farmer, doctor, and minister" (*Brusie* v. *Griffith*, 34 Cal. 306), or livery-stable keeper.

In *Dove* v. *Nunan*, the plaintiffs were engaged in business as coal dealers, and used a team, consisting of two horses and a wagon, by hauling coal and other commodities for other people for hire, and the proceeds therefrom were expended in their support. They also occasionally used the team in hauling coal and wood from their own coal-yard to the place where they retailed the coal. Upon these facts the court said: "The fact that the plaintiffs used the horses and wagon in question as teamsters for hire, and that they expended the money thus received in support of themselves and their families, did not exempt the property from execution. In order to entitle a party to claim as exempt from execution two horses, * * * he must show that he is a cartman, * * * huckster, peddler, teamster, or other laborer, and that he habitually earns his living by the use of such horses." (62 Cal. 400.)

It is a matter of common knowledge that the particular busi-

ness upon which respondent relies is incidental to and connected with the general business of livery-stable keepers, and unless all livery-stable keepers are entitled to have two horses and their harness and one wagon exempt, respondent is not entitled to such exemption. His business was that of a livery-stable keeper and nothing else. His character as a livery-stable keeper was not changed by the fact that the team in question was only used for the particular purpose specified, or from the fact that respondent, in person, always drove the team. If respondent had been engaged in a business that entitled him to claim the exemption, the property would be exempt, although the horses and carriage had been occasionally let for hire to other parties, and would also be exempt, although respondent employed other persons to occasionally drive the team.

The rulings of the district court exempting the property from execution are hereby set aside, and the cause remanded to the district court for such further action as may be necessary in accordance with this opinion.

LEONARD, J., dissenting:

I think the judgment of the court below should be affirmed. As to the carriage, it is claimed by counsel for appellant that this court is bound to follow the case of *Quigley* v. *Gorham*, 5 Cal. 418,[1] wherein it was decided that, in the statute, of which ours is a copy, "the term ‘wagon’ is intended to mean a common vehicle for the transportation of goods, wares, and merchandise of all descriptions," and that "a hackney coach, used for the conveyance of passengers, is a different article, and does not come within the equity or literal meaning of the act." This court has frequently recognized and followed the well-established rule, subject, however, to equally well-established exceptions, that, in adopting a statute from a sister state, the legislature is presumed to have intended to adopt it as construed by the highest court of that state. One of the exceptions to the rule stated arises when the construction placed upon the statute in a sister state is inconsistent with the spirit and policy of our own laws. (*McCutcheon* v. *People*, 69 Ill. 605; *Cole* v. *People*, 84 Ill. 218; *Streeter* v. *People*, 69 Ill. 595; *Rigg* v. *Wilton*, 13 Ill. 15;[2] *Campbell* v. *Quinlin*, 3 Scam. 288; *Jamison* v. *Barton*, 43 Iowa, 285.)

It is the policy of our constitution and laws to allow debtors,

---

1  63 Am. Dec. 139.          2  54 Am. Dec. 419.

within reasonable limits, to retain those things that are necessary to enable them to enjoy the necessary comforts of life, and to carry on their usual employments. (*Elder* v. *Williams*, 16 Nev. 423; Const., art. 1, sec. 14; 1 Comp. Laws, 1282.) It is within the spirit and policy of our constitution and laws, and according to the almost universal practice of courts, to construe exemption laws liberally. " Wherever this rule or policy prevails, and it does not clearly appear whether certain property is or is not embraced within the exempting statute, the debtor will generally be allowed the benefit of the doubt, and suffered to retain the property." (Freem. Ex., sec. 208.) In the case of *Quigley* v. *Gorham* the strictest construction possible was adopted. The word " wagon " was declared to have been used by the legislature in its primary sense only. The constitution provides that " the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws exempting a reasonable amount of property from seizure or sale for payment of any debts or liabilities hereafter contracted." Of course, it is the duty of the legislature to declare the kind and amount of property that shall be exempt; but when that has been done, it is the duty of courts to carry out the constitutional policy by including among the exempted articles anything which, by a liberal construction of the statute, may be embraced by the words, and which must be saved for the debtor's use in order to accomplish the object of the legislature.

I have no doubt that the legislature intended to exempt two animals, with their harness or other equipments, and any suitable vehicle, by the use of which any person habitually earns his living, and to the exercise of whose business such animals, etc., are necessary. No good reason can be given why a carrier of passengers should not have the means of support as well as the carrier of goods, wares, and merchandise. He is one of a class of persons whose living depends upon the use of a team, and that class the legislature intended to protect by the statute under consideration. To say that the carrier of passengers is not entitled to be protected simply because the vehicle named is a " wagon," is following the letter rather than the spirit of the statute; it is considering the wording instead of the object of the statute. In view of the liberal construction everywhere given to exemption laws under constitutions and statutes like ours, the word " wagon " is sufficiently

comprehensive to include all four-wheeled vehicles used for the transportation of persons or things. (Freem. Ex., sec. 228; *Allen* v. *Coates*, 29 Minn. 48; *Rodgers* v. *Ferguson*, 32 Tex. 533; *Nichols* v. *Claiborne*, 39 Tex. 363.)

Many analogous cases may be cited showing the spirit and policy of such statutes. In Arkansas, where the statute extended the exemption to "free white citizens," the word "citizen," as there used, was held to be equivalent to "resident" or "inhabitant." (*McKenzie* v. *Murphy*, 24 Ark. 155; and see *Cobb* v. *Coleman*, 14 Tex. 594.) Webster defines a "team" to be "two or *more* beasts harnessed together to the same vehicle for drawing"; yet under the term "team," in exemption statutes, in numerous instances, a single animal has been held exempt. In those cases the courts said the intent of the legislature was to protect the debtor in the use of his means of making a living; and the intent that would exempt a whole team would also exempt half. They followed the spirit rather than the letter of the statute. And so, many courts have made the word "team" include the vehicle drawn by it, and the term "horse" to include a saddle, bridle, stake-rope, and martingale, although the latter articles were not mentioned in the statute, upon the principle that an exemption of a horse carried with it everything essential to its beneficial enjoyment.

In *Mundell* v. *Hammond*, 40 Vt. 641, two calves nine months old were saved to the debtor, under a statute exempting "a yoke of oxen or steers." In *Mallory* v. *Berry*, 16 Kan. 293, a wild, unbroken steer, twenty months old, was held exempt under a statute exempting "a yoke of oxen." In *Favors* v. *Glass*, 22 Ala. 624,[1] a cart was held to include a four-wheeled wagon. In Texas, under a statute exempting "two horses," a horse and mule are exempt. (*Allison* v. *Brookshire*, 38 Tex. 200.) In Tennessee, a jackass is exempt, under a statute exempting "a horse, mule, or yoke of oxen." (*Richardson* v. *Duncan*, 2 Heisk. 220; and see *Webb* v. *Brandon*, 4 Heisk. 288; *Freeman* v. *Carpenter*, 10 Vt. 433;[2] *Wilcox* v. *Hawley*, 31 N. Y. 655.)

Believing that the decision in question is opposed to the spirit and policy of our constitution and laws, and that it does not express the intention of the legislature, I do not feel bound to follow it. As I understand the decision of the court, the entire property in question is held not to be exempt, because

1 58 Am. Dec. 272.            2 33 Am. Dec. 210.

it is, in fact, a part of the livery-stable outfit, and respondent, being a livery-stable keeper, is not one of the persons entitled to exemption, since he is not, in the sense of the statute, either a "cartman, huckster, peddler, teamster, or other laborer"; although by the use of this property he habitually earned his living in part, just as he did with the other property in the stable, I do not think it was any part of the livery-stable, and I do think respondent is a laborer, in the sense of the statute, who habitually earned his living by the use of this property. Respondent was a livery-stable keeper, because he kept horses and vehicles for the purpose of letting them to the public for compensation, and he boarded horses for others. But the property in controversy was not so used. He neither let nor offered to let it to others. So far as this team is concerned, he was a private carrier of persons or passengers. (Redf. Carr., sec. 19; Schouler, Bailm. 590; Ang. Carr., sec. 46.)

This team was set apart for a use entirely different from that to which the others were put—as much so as it would have been if kept for the same purpose at another stable in a different part of the town. If respondent had had this team only, or a dozen others like it, and had used the one in question, or all, as he did this, no one could say he kept a livery-stable. If he had kept in his stable a span of horses simply, and only to haul merchandise from the depot to stores, those horses would not have been a part of his livery-stable any more than a yoke of oxen kept for the same purpose would have been. Livery-stable keepers often do many things outside of that business, because it is convenient and profitable to do so.

There is a livery-stable kept in Carson by men who also run a daily stage to Lake Tahoe. The stage horses are kept at the stable, but they are used exclusively in stage work—a business entirely foreign to livery business proper. Should a two-horse stage team be claimed as exempt under the statute quoted in the court's decision, it does not seem to me that it could be regarded as a part of the livery-stable, or that the validity of a claim of exemption would depend upon whether livery-stable keepers are entitled to an exemption.

There is a man in Carson who runs an express wagon. He carries trunks and packages to and from the depot and elsewhere. He has two horses, their harness, and a wagon, by the use of which he habitually earns his living. His team is now

exempt.   Suppose he should buy out a livery-stable, carry on that business, and besides, that of expressman, with the team he now uses, keeping the express team at the stable.   Now, admitting for the present that as a livery-stable keeper none of his livery teams would be exempt, why would he not be as much entitled to claim exemption for his express team as he was before purchasing the livery-stable?   Is he to be deprived of an expressman's exemption simply because he is a livery-stable keeper also, and because a livery-stable keeper cannot claim an exemption?   It may be that the property in question would not have been exempt, unless a livery-stable keeper may claim exemption, if respondent had used it in part as livery property—had let it for hire to other parties—and partly as he did use it.   But in view of the liberal construction that should be given to exemption statutes, in deciding whether respondent was a "cartman, huckster, peddler, teamster, or other laborer," I insist that the test should be the use to which he put *this* property.

Oftentimes a man is obliged, and he has always a right, to carry on different kinds of business.   He may be a carpenter and joiner and a painter, a wagon-maker and blacksmith, a physician and dentist, a lawyer and minister.   Whether persons so engaged in two different kinds of business can claim an exemption for each occupation or profession need not be discussed, because it is not shown that respondent claimed or had the benefit of any exemption except the team in question, and such other property as is accorded to all debtors regardless of their occupations.   But the mere fact that a debtor carries on two or more kinds of business or professions does not deprive him of all exemptions.   Nor, under our statute, must the exempted articles belong to the business in which he is *principally* engaged, as in the case under the Michigan statute. (*Morrill* v. *Seymour*, 3 Mich. 67.)   In this state, I think that when a person engages in different pursuits, either of which, if pursuing that avocation alone, would entitle him to an exemption, he may, at least, choose from which business the articles exempted shall belong; and if he is engaged in two kinds of business, only one of which entitles him to favor, he may claim the exemption given under that one, the same as though he was engaged in no other.   The fact that the use to which the property in dispute was put is "incidental to and con-

nected with the general business of livery-stable keepers," does not, as to this property, make him a livery-stable keeper. By our statute, a livery-stable keeper is one "who keeps horses or carriages for rent or hire." (2 Comp. L. 3186; Stat. 1861, 71, sec. 79.) "Any person whose business it is to keep horses for hire or to let, or to keep, feed, or board horses for others, shall be regarded as a livery-stable keeper." (14 U. S. Stat. 116.)

With this property, respondent habitually earned his living in part, not as a livery-stable keeper, but as a private carrier of persons and passengers, and it is just as much entitled to exemption as it would have been if he had not run a livery-stable with other property. If it is true, as the court decides, that a livery-stable keeper is not entitled to an exemption, then that fact is an additional reason in favor of the view I take; because otherwise, respondent will be deprived of all instrumentalities of productive labor, while other laborers, who habitually earn their living by the use of horses, oxen, or mules, and to the exercise of whose business such animals are necessary, may enjoy property that is just as necessary for his support as it is to theirs.

"The manifest requirement of the constitution is, that the exemption laws should be so framed that all classes of debtors should, as nearly as may be, participate equally in their benefits. We believe our exemption laws were framed and enacted in the spirit of that requirement. Looking through these statutes, we find no adequate provision in favor of merchants or shop-keepers as a class, unless it is contained in the statute under consideration. Their little stock in trade, may be as indispensable to the support of their families as are the tools of the mechanic, or miner, the press and type of the printer, or the library of the lawyer. Why should they not have the same protection as the others? And when we find language in a statute which may fairly be construed as giving them the same protection extended to other classes of debtors, why should not that construction be adopted?" (*Wicker* v. *Comstock*, 52 Wis. 318.)

My opinion is, that respondent, as a carrier of passengers, is entitled to the exemption claimed, because, in the sense of the statute, he is a "laborer" who habitually earns his living by the use of the property in dispute, although he is also a livery-

stable keeper, and as such is not entitled to an exemption. But I think, also, that if this property is a part of the livery-stable outfit, still respondent, as a livery-stable keeper, is entitled to the benefit of the statute. I agree with the court in saying that, "in order to be entitled to the benefit of the exemption law, respondent must show that he was engaged in some business, in which, by the use of his horses, harness, and carriage, he habitually earned his living." It is not and cannot be said that a livery-stable keeper does not fill this requirement. Of all occupations, there is none in which a man must so signally fail, if deprived of the use of horses, harness, and carriages, as that of a livery-stable keeper. His entire business depends upon their use; without them his occupation is gone. True, he does not drive his own teams; but that is admitted to be unnecessary.

"The words 'used by the debtor in obtaining the support of his family' are general, and restricted to no particular mode of use. They are answered when the team is hired to others for a compensation, which compensation goes into the general fund to support the family, as well as where the debtor himself goes with the team as its driver, and adds the earnings of his labor to that of the team. (*Washburn* v. *Goodheart*, 88 Ill. 231; *Elder* v. *Williams*, 16 Nev. 420.)

But it is said that, in the sense of the statute, respondent is not embraced by the words "other laborer," because a livery-stable keeper is not *ejusdem generis* with "cartman, huckster, peddler, and teamster." The four words used in the statute are not themselves *ejusdem generis* except in one sense. They have but one characteristic common to all, which is, that they specify persons in whose business a team is absolutely essential. To that extent only were they intended to be *ejusdem generis*. What other common feature is there between a cartman or teamster, and a peddler? To the extent just stated, a livery-stable keeper is *ejusdem generis* with those named. In *U. S.* v. *Lawrence*, 13 Blatchf. 212, the defendant was indicted for forgery under a statute which provided a penalty for the forging of "any bid, proposal, guaranty, official bond, public record, affidavit, *or other writing.*" The court said: "The first position taken in support of the demurrer is, that the rule of construction, according to which general words are restricted by particular words, should be applied to this statute, and the

Opinion of Leonard, J., dissenting.

meaning of the words 'other writings,' in this provision, restricted so as to exclude from the operation of the statute such writings as are set forth in this indictment. The rule here invoked is not an arbitrary rule, but one of many resorted to for the ascertainment of the intent of the legislator, when such intent is not otherwise apparent. To apply it to all general words would often defeat the intention of the legislator, and such, in my opinion, would be the effect if applied to this statute. Nothing in the language used, nor in the mischiefs intended to be remedied, nor in the circumstances under which the statute was enacted, indicates that the words 'other writings' were used in a restricted sense, but the contrary. Various writings are mentioned, but these writings have no common object, nor any characteristic features common to all, from which to infer an intention to restrict the effect of the provision to any particular class of writings. The language of the statute furnishes, therefore, no criterion by which to restrict its general words."

In *Wicker* v. *Comstock, supra,* the court construed a statute which exempted "the tools and implements, or stock in trade, of any mechanic, miner, *or other person,* used or kept for the purpose of carrying on his trade or business, not exceeding two hundred dollars in value." It was claimed by the defendant that the term "or other person" should be interpreted to mean only a person *ejusdem generis;* that is, an artificer of some sort, and not a merchant merely. The court said: "* * * We conclude that the maxim *noscitur a sociis* is satisfied by restricting the operation of the statute to those debtors who, although not artificers, must necessarily keep and use a stock in trade in carrying on their business, and who are not protected by other special provisions of the statute. This construction entitles the plaintiff to the exemption claimed." (And see *McAbe* v. *Thompson,* 27 Minn. 135; *Burgess* v. *Everett,* 9 Ohio St. 426.)

The court is of opinion that livery-stable keepers would have been named in the statute if the legislative intent had been to include them. I do not think there was any effort or desire to name all, or nearly all, whom the statute was intended to favor. It would not be difficult to designate many not mentioned who come within the statute.

For the reasons above stated, I dissent from the decision of the court.