JAMES BRUSIE v. M. G. GRIFFITH, J. B. HUME, AND G. W. KING.

PERSONAL PROPERTY EXEMPT FROM EXECUTION.—The provisions of the third subdivision of section two hundred and nineteen of the Practice Act relates exclusively to exemptions in favor of judgment debtors who are farmers.

"TEAMSTER."—In the sense of the statute, (Practice Act, Sec. 219, Subd. 6,) one is a "teamster" who is engaged with his own team or teams in the business of teaming, i. e., in the business of hauling freight for others for a consideration, by which he habitually supports himself and family, if he has one.

IDEM.—While a teamster need not drive his team in person, yet he must be personally engaged in the business of teaming habitually, and for the purpose of making a living by that business.

IDEM.—If a carpenter or other mechanic who occupies his time in labor at his trade, purchases a team or teams, and also carries on the business of teaming by the employment of others, he does not thereby become a "teamster" in the sense of the statute. In order to entitle "a party" to claim as exempt from execution two horses, etc., under said sixth subdivision, he must show that he is a cartman, huckster, peddler, teamster, or other laborer, and that he habitually earns his living by the use of such horses.

"LABORER."—By "other laborer," as used in the sixth subdivision of section two hundred and nineteen of the Practice Act, is meant one who labors by and with the aid of his team, and not by the aid of a pick and shovel, or the implements of other trade or vocation.

"TEAMSTER OR LABORER."—Where B., who claimed two horses, etc., as exempt under the said sixth subdivision, (Practice Act, Sec. 219,) was a clerk in a store, at a stated salary, and had purchased said horses, etc., mainly to furnish employment for his son, who was seventeen years old, and by whom exclusively the team was used habitually in hauling freights for said store and for other parties, and in delivering goods from said store to customers, all of which was done for the benefit of B. and his family: held, that B. was neither a teamster nor other laborer in the statutory sense.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

This was an action to recover possession of certain two horses and their harness from defendant Griffith, who was Sheriff of El Dorado County, and had levied upon and taken said property from plaintiff under executions issued on judgments against plaintiff and in favor of defendants Hume and King. The plaintiff in his complaint claimed said property as exempt from said executions, and averred that at the time of said levy he was a teamster and laborer, and habitu-

ally earned a living for himself and family with said horses, etc. The answer of defendants traversed said averments, and set up in justification of their possession said levy under said judgments and executions. On the trial the Court gave, at the request of plaintiff, the following instructions to the jury, to the giving of which the defendants at the time duly excepted, to wit:

" In determining the question whether the plaintiff, at the time of the taking of the property, was a teamster or laborer, who by the use of his team habitually earned his living, it is not necessary in order to determine this question in favor of the plaintiff that you should find that the plaintiff ever drove the team himself, for if he never personally drew a rein over the team in his life, yet if he owned the team, and caused it to be driven by his minor son in the business of teaming, and the profit derived from this business contributed to the support of himself and family, then he would be within the statute, notwithstanding he personally may have been engaged in carrying on the business of Wellman, Peck & Co., as their clerk, and receiving from them the sum of seventy-five dollars per month. A teamster, within the meaning of the statute, is one who owns a team, and with it carries on the business of teaming. " Other laborer," within the meaning of the statute, " who by the use of his team habitually earns his living," refers to any laborer who owns a team by the use and employment of which he habitually earns his living and that of his family; and if you find from the evidence that plaintiff was neither a teamster nor a laborer, who by the use of his team habitually earned his living and that of his family, you will find for the defendants. It is not necessary, however, that a laborer or teamster should wholly support himself or family with the use and earnings of his team to bring himself within the exemption. It is not required that he should exclusively and personally be employed with his team, and exclude himself from all employment except with his team, yet before he

can claim the exemption he must be a teamster as I have defined it, or other laborer who habitually uses his team, and by such use habitually earns his living in whole or in part."

The plaintiff had a verdict and judgment in the Court below, and defendants moved for a new trial on the grounds: 1st. That the verdict and judgment were against the evidence and against law; 2d. That the Court erred in giving to the jury said instructions. The motion was denied, and defendants appealed from said judgment and the order of Court denying a new trial.

The other facts are sufficiently stated in the opinion of the Court.

*Geo. E. Williams,* and *John Bush,* for Appellants, argued:

That respondent's case falls under the sixth subdivision of section two hundred and nineteen of the Practice Act; that under that subdivision three things, as requisites, must be shown by respondent to sustain the exemption as claimed, viz: first—that he was a cartman, teamster, or laborer; second—that he used the team himself; and, third—that he used the team habitually for the purpose of earning his living; that the Court erred in instructing the jury that "a teamster, within the meaning of the statute, is one who owns a team, and with it carries on the business of teaming," because it ignores the statutory requirements that the teamster should use the team himself, or habitually earn his living by its use; and cited *Davison* v. *Prosser,* 32 Barb. 291, and *Burgess* v. *Everett,* 9 Ohio, 425.

*Geo. G. Blanchard,* for Respondent.

Exemption laws are to be liberally construed. (*Gilman* v. *Williams,* 7 Wis. 329; 8 How. 76.) The facts proved bring plaintiff within the statute. The third subdivision of section two hundred and nineteen of the Practice Act exempts

from execution " two horses and their harness belonging to the judgment debtor." The sixth subdivision of section two hundred and nineteen exempts " two horses and their harness, by the use of which a teamster or other laborer habitually earns his living." The third subdivision is not restrictive in its terms ; it exempts " two horses and harness to the judgment debtor." The sixth is restrictive to a certain class, to wit : " teamster or other laborer." Plaintiff has brought himself within this subdivision as well, and can sustain the exemption claimed by him under either subdivision.

By the Court, SANDERSON, J. :

The third subdivision of section two hundred and nineteen of the Practice Act relates exclusively to exemptions in favor of judgment debtors who are farmers, and therefore has no application whatever to this case, for it is not pretented that the plaintiff was engaged in farming, or that the team was being used by him in the prosecution of that business.

The case falls under the sixth subdivision, which reads as follows : " Two oxen, two horses, or two mules, with their harness, and one cart or wagon, by the use of which a cartman, huckster, peddler, teamster, or other laborer, habitually earns his living."

The case shows that the plaintiff, prior to the 1st of August, 1865, was a merchant—that on that day he sold out the business and stock to Wellman, Peck & Co. for the purpose of paying his debts, with the understanding that he was to have the business back after some of the goods had been sold and the stock reduced ; that two weeks after the sale he went back into the store as chief clerk and managing agent for his vendees, at a monthly salary of seventy-five dollars ; that he had a family consisting of a wife and five children ; that he took his family supplies from the store generally, but sometimes purchased from other parties and

gave them credit in the store for the amount.  While thus engaged, he bought the team for the purpose mainly of affording employment in teaming for his son, who was seventeen years of age; that the team was used in hauling freight or goods to the store, and for other parties, and in delivering goods. from the store to customers; that all the teaming was done by his son, but for his benefit and that of his family.

It is very questionable whether, under the circumstances detailed, the sale to Wellman, Peck & Co. was not a sham, and made chiefly to enable the plaintiff to continue his business in the name of that firm without molestation from his other creditors.  If so, the transaction did not change the occupation of the plaintiff from that of a merchant into that of a clerk even, much less a teamster or other laborer who habitually earns his living by the use of his team.  But if we assume, for the purposes of the case, that the sale was *bona fide*, and that the plaintiff ceased to be a merchant and thereafter became a clerk, we still think that he did not become a teamster, or a laborer, who habitually earns his living by the help of his team, in the sense of the statute.

In common speech a teamster is one who drives a team, but in the sense of the statute every one who drives a team is not necessarily a teamster, nor is he. necessarily not a teamster unless he drives a team continually.  In the sense of the statute, one is a teamster who is. engaged, with his own team or teams, in the business of teaming—that is to say, in the business of hauling freight for other parties for a consideration, by which he habitually supports himself and family, if he has one.  While he need not, perhaps, drive his team in person, yet he must be personally,engaged in the business of teaming habitually, and for the purpose of making a living by that business.  If a carpenter or other mechanic who occupies his time in labor at his trade purchases a team or teams and also carries on the business of teaming by the employment of others, he does not thereby

become a teamster in the sense of the statute. So of the miner, farmer, doctor and minister.

In order to entitle a party to claim as exempt from execution two horses, etc., under the sixth subdivision of section two hundred and nineteen, he must show that he is a cartman, huckster, peddler, teamster or other laborer, and that he habitually earns his living by the use of such horses, etc. By " other laborer " is meant one who labors by and with the aid of his team, and not by the aid of a pick and shovel, or an anvil, or a lapstone, or a jackplane, or a yardstick: In our judgment the plaintiff failed to show that he belonged to either of these classes.

The instructions of the Court were not in accordance with the foregoing views, and they were so far erroneous.

New trial granted.