### JOSEPH MUNDELL *v.* GEO E. HAMMOND.

*Attachment. Exemptions. Statute.*

A yoke of steer calves less than a year old come within the letter and within the intent and meaning of the General Statutes, chapter 41, § 13, which enumerates articles as exempt from attachment. They are therefore exempt, together with sufficient forage for keeping the same through the winter.

The question whether the forage would be exempt, if the debtor has not the stock stated as exempt, not decided.

The amendment of said section by addition of a pair of horses as exempt, in 1866, did not affect the same in this respect.

This is an action in trespass, with a count in trover, for three tons of hay. Plea, the general issue, and trial by jury at the September Term, 1867, BARRETT, J., presiding.

The following facts, among others, appeared at the trial:

December 19th, 1866, the plaintiff was possessed of the hay in controversy. On that day the defendant, against the will of the plaintiff, took and carried away said hay.

December 15th, 1866, one E. A. Plimpton, executor, sued the plaintiff, and attached all the hay in the plaintiff's barns. His suit was entered in court, and final judgment was obtained by said Plimp-

ton against the plaintiff, for an amount much greater than the value of the hay in controversy.

On the day of the attachment, the plaintiff owned no more hay and other forage than sufficient to keep one cow, ten sheep, and a yoke of oxen or steers, through one winter, but he had sufficient, besides the hay in controversy, to keep a cow and ten sheep through one winter.

December 15th, the plaintiff owned one cow, ten sheep, and a pair of steer calves, which would become a year old the spring following. He had at that time no other oxen or steers, nor did he have any team. He was a farmer, carrying on a farm of upwards of one hundred acres.

December 16th, the day following Plimpton's attachment, the plaintiff purchased a yoke of oxen or steers. At the time of the purchase he had no actual knowledge of Plimpton's attachment. Those oxen or steers, so purchased, he had at the time the defendant took and carried away the hay.

The defendant claimed, and requested the court to charge the jury, that the plaintiff was not entitled to recover for the hay, because, upon the facts shown, the defendant was liable for the hay to the officer who made Plimpton's attachment. The court declined to instruct the jury as requested, but did instruct them that the defendant's liability to the officer would not constitute a defence to this suit. To which the defendant excepted.

The jury returned a verdict for the plaintiff to recover the value of said three tons of hay.

After judgment on said verdict, the defendant moved the court that the plaintiff's execution be stayed, until the plaintiff should remove the lien on said hay created by Plimpton's attachment.

The court held, and decided as matter of law, that the hay removed by the defendant was liable to Plimpton's attachment, inasmuch as the case showed that the plaintiff had no yoke of oxen or steers, other than said pair of steer calves, on the day the attachment was made, and thereupon granted the motion of the defendant, and ordered said execution to be stayed. To which the plaintiff excepted.

Said rulings to which exception was taken were *pro forma.*

*Charles N. Davenport*, for the plaintiff.

*H. H. Wheeler*, for the defendant.

The opinion of the court was delivered by

PECK, J.    The action is trover for three tons of hay, for which the plaintiff recovered judgment in the county court.    The only question made in this court is, whether the county court erred in staying execution upon a supposed liability of the defendant to an officer who attached the hay in question, with the residue of the plaintiff's hay, in a suit of one Plimpton against this plaintiff, four days before the conversion of the hay in question by the defendant.

If the hay in question was exempt from attachment, the defendant was not liable to the officer, and therefore the order of the county court, staying execution, not justified.    It appears that the plaintiff, at the time of the attachment, December 15th, 1866, was a farmer, carrying on a farm of one hundred acres, and owned no more hay and forage than sufficient to keep one cow, ten sheep and a yoke of oxen or pair of steers through one winter, but had sufficient, beside the hay in controversy, to keep a cow and ten sheep through one winter.    He owned one cow, ten sheep, and a pair of steer calves which would become a year old the next spring, and had no other oxen, steers, or other team.

It is insisted on the part of the plaintiff that the hay in question was exempt from attachment on two grounds, *first*, that the steer calves which the plaintiff owned were steers within the meaning of the statute exempting from attachment one pair of oxen or steers, and forage sufficient for keeping the same through the winter ; that having the steers, forage sufficient to winter them was exempt; *second*, that if the steer calves were not such as come within the meaning of the statute, still forage sufficient in quantity to winter a yoke of oxen or steers is specifically exempted, whether the party owns any oxen or steers or not.    If the steer calves, as they are called, are exempt, the forage to winter them was clearly exempt from attachment.    The General Statutes, after enumerating various articles of property as exempt from attachment and execution, adds,

"and also one yoke of oxen or steers, as the debtor may select, with sufficient forage for keeping the same through the winter." In construing this statute, we cannot extend it beyond the true meaning and intent of the legislature, but must look at the language used, and the object and purpose in view, and interpret it in the light and spirit of former decisions upon the various provisions of the statute on this subject. Among the very early statutes on this subject was a provision exempting a yoke of oxen from attachment, but no reported case has come down to us in which a construction was given to it by the courts. It remained in force but a short time, and the present provision in question is of so recent origin that we are without any direct decision giving it a construction. It is established by the whole current of decisions in this state on this subject, that the statutes exempting certain property from attachment are remedial in their character, and ought to receive a liberal construction in favor of the debtor. In *Dow* v. *Smith,* 7 Vt. 465, COLLAMER, J., says, "This exemption is charitable and in the cause of humanity, and ought to receive a liberal practical construction." It was held in that case that a two year old heifer, forward with calf, when the owner had no other cow, was a cow within the intent and scope of the statute. COLLAMER, J., says, "This only permits the poor man to call and consider this his cow when he has no other more clearly entitled to the appellation;" thus not attempting to put the case on the ground that the heifer was a cow, within the common use and acceptation of the term. In *Freeman* v. *Carpenter,*10 Vt. 433, it was decided that a two year old heifer in the spring, that had never had a calf, and that was not with calf, was exempt under the provision exempting a cow, the debtor having no other cow. WILLIAMS, CH. J., says, "The statute in terms exempts one cow from attachment and execution. Possibly, if it were a penal statute, it might be considered that the term only applies to the animal after she has brought forth a calf. This is, undoubtedly, not only the common, but the correct meaning of the term." Yet after conceding this, the court held that the heifer was exempt. It seems in these cases that the court by implication extended the statute back to a certain extent, to protect the young creature during its progress, growth, and

development into a cow, before it had reached the stage of usefulness as a cow, or became a cow according to the common meaning of the term. If the statute, instead of exempting a cow merely, had read, *one cow or heifer*, the court probably would have had no difficulty in extending it to a much younger animal than they have occasion to in these cases; even to a heifer calf. If the provision in question in the case at bar had simply exempted a yoke of oxen, a question somewhat similar to the question in the cases alluded to, might have arisen; that is, the question how old a steer must be in order to be an ox. But the legislature has shut the door against this question, by exempting in terms steers as well as oxen. But one question is still left for the court to decide, which is the real question in this case; that is, how old a steer calf must be before it is a steer. I think if this question was put to a farmer, how old a male animal of this species must be before it can' become a steer, he would say that if its condition in other respects was such as to entitle it to the appellation of steer, no particular age was necessary, except that it must not be too old; that it might be too old to be a steer, but not too young. The animals in question in this case being some two or three months less than a year old, are properly denominated, as cattle of this age generally are, calves; but they are none the less steers because they are called calves. They are calf steers, or steer calves. In a few months they would have been called yearlings, but the full description would be yearling steers, so at the end of another year they would be denominated two year old steers, and so on till the age when they would more properly be called oxen. These steer calves were not heifers, they were not bulls, and, therefore, must be steers. They were young animals of the species and description that by time and subsequent growth would have become oxen, and they come within the literal import of the term steers. But still it is contended that in this statute it is manifest that the words used were intended in a more restricted sense. If this is so, it is our duty to so construe them. It is urged that the object of the statute in making this exemption, was to enable the debtor to have the use of cattle of this description for a team, and that, as these creatures were too young for immediate use for that purpose, they did not come within

Mundell *v.* Hammond.

the exemption.   This undoubtedly was the principal object in view.
but when certain property is specifically and unqualifiedly exempted,
it does not become attachable merely because, in the particular case,
the debtor is so situated, for the time being, as not to be able imme-
diately to put the property to the use designed, nor because the prop-
erty itself is not in a condition to be put to such immediate use.
The law exempts ten sheep, obviously for the purpose of enabling a
man thereby to feed and clothe himself and family ; and although it
does not exempt lambs *eo nomine*, yet no one would suppose if a
debtor had five sheep and five lambs that the five lambs could be
attached because they had not arrived at that age when the flesh is
fit for food, or the wool of any value for clothing.   They are of
value to raise into sheep, and the debtor has a right to keep them for
that purpose.   So with these young steers, they are exempt in terms,
and are of value to raise up to oxen so as to answer ultimately the
purpose designed by the statute.   The language of the General
Statutes is, " *also one yoke of oxen or steers such as the debtor may
select.*"   This statute says nothing about requiring the oxen or steers
to be fit for a team, or being actually used for that purpose in order
to be exempt.   The exemption is absolute and unqualified.   If the
legislature had intended to limit this provision exempting steers, to
steers of the age when they are usually put to service, or to such as
were actually put to use as a team, some provision of this kind would
have been inserted.   There being nothing of this kind, it is fair to
infer that in the general terms used, the legislature had in view
the fact that most men for whose benefit the law exempting property
from attachment is made, are scarcely in possession of sufficient means
to purchase full grown cattle of this kind, and without this protection
in raising them, they could rarely if ever supply themselves with a
team.   This construction is not enlarging the amount of property
exempt beyond that specifically exempted by the statute, for the
younger the steers the less their value.   We think, therefore, these
steer calves come within the intent and meaning of the General
Statutes, chapter 47, section 13.

But it is insisted that by the act of 1866, the exemption of oxen
and steers is limited in terms to such as are kept and used for team

Mundell *v.* Hammond.

work. It appears that in 1866 this whole section 13 was re-enacted in the same terms, with an addition as to horses. The Act is in the same words as section 13, as to the exemption of oxen and steers, with an addition as to horses, as follows: *and also one yoke of oxen or steers as the debtor may select, two horses kept and owned for team work, and such as the debtor may select in lieu of oxen or steers but not exceeding in value the sum of two hundred dollars, with sufficient forage for the keeping of the same through the winter.* This amendment giving a party a right to keep two horses in lieu of oxen or steers, in no way affects a party who does not act under it. It has no more effect upon the construction of the former law, than if it had been passed in a separate statute. The whole provision as to being *kept and used for team work,* and as to not exceeding in value the sum of $200., applies exclusively to the two horses. The intent of this was not to give an absolute or unqualified right to all persons to keep two horses for every purpose, and thereby to allow, under cover of such exemption, hundreds and thousands of dollars to be invested in fast or sporting horses; but to limit the exemption of horses to such persons as kept and used them for a team, and with a limitation as to value.

The exception taken by the defendant on trial not being insisted upon, the judgment of the county court for the plaintiff, is affirmed. As the steers were exempt from attachment, the hay in question was also exempt, and the court erred in staying execution. The other ground on which the plaintiff's counsel claim the hay was exempt need not be noticed.

As the order of the county court staying execution is not well founded in law, that order is vacated, and the plaintiff is entitled to execution.