TISHOMINGO·SAVINGS INSTITUTION *v.* TATE YOUNG.

[40 South. Rep., 9.]

1. EXEMPTION. *Work horses. Code* 1892, § 1963, *sub.* 9, *par.* (*a*).

Under Code 1892, § 1963, sub. 9, par. (*a*), exempting two work horses from execution, animals used by a manufacturer in driving from his home to his place of business, in taking his family on pleasure drives, and, occasionally, to make business trips, are not exempt.

2. SAME. *Code* 1892, § 1971. *Selection of·personal property.*

Under Code 1892, § 1971, entitling every householder in a municipality to select as exempt from execution personal property not exceeding two hundred and fifty dollars in value, the exemptionist may make selection according to his taste and judgment.

FROM the circuit court of Alcorn county.

HON. EUGENE O. SYKES, Judge.

The Tishomingo Savings Institution, the appellant, was the plaintiff in the court below; Young, the appellee, ·was defendant there. Plaintiff recovered a judgment against the defendant and levied an execution on two horses which were claimed by the defendant as exempt. An issue was made up in the court below as to whether the horses were exempt, and from a judgment on this issue in favor of defendant in execution the plaintiff appealed to the supreme court. The facts are fully·stated in the opinion of the court.

*Boone & Curlee,* for appellant.

The term "work horse" does not mean a horse that works, any more than "work bench" means a bench that works, or "work room" a room that works, or "workshop" a shop that works, or "work table" a table that works, or "work basket" a basket that works. Illustrations might be multiplied *ad infinitum.* Broadly speaking, a workman or a workingman might be defined as a man that works. This broad definition would include the

whole adult human family, except the comparatively few idlers. Man is a rational being and is classed with reference to his labor according to the labor he performs.     He classes himself, names his classes, and is known by the class he elects to join.     When we leave the human family and descend to the classification of tools and chattels, we classify them, not according to the functions they perform as done independently, but according to the use to which they are put by man.     A horse is merely a tool or chattel, and is a "work horse" or "play horse" according to whether his owner, the man, uses the horse in performing the man's work or play.     It is as idle to talk of a work horse being a horse that works as it is to talk of playing cards being cards that play.     A playing card is a card with which man plays, just as a work horse is a horse with which man works.     We correctly call a saw and a jack plane work tools, but no one would think of calling a baseball bat and a polo mallet work tools, though the work performed by the latter is fully as arduous and wearing as that of the former.     No horse in the world performs more arduous work than a polo pony, yet a polo pony is no more a "work horse" than a polo mallet is a work tool; and the reason is that, regardless of the work that is done by these agents, they are not agencies with which man does his work.     A family buggy horse is a convenient chattel, and is sometimes very necessary or convenient for the giving of pleasure or recreation, but it is not an agency with which man performs his work, and is, therefore, not a work horse.

Many exemption statutes exempt a specified number of horses without qualification.     Others, including ours, add the qualifying word "work."     This qualifying word is not mere idle surplusage, but it is put into the statute to limit the exemption to horses with which man performs his work.     If this is not the meaning, and if, as contended by the defendant, a work horse is any horse that works, then the qualifying word is merely surplusage, and "work horse" is synonymous with "horse;" for all

horses work, with the single exception of stallions, judging from the horses' standpoint.   *Noland* v. *Wickham,* 9 Ala., 169 (44 Am. Dec., 435); *Roberts* v. *California,* 38 Cal., 383; *State* v. *Powers,* 36 Conn., 77; *Rockwell* v. *Hubbell's Adm'rs,* 45 Am. Dec., 245. .

*Lamb, Johnston & Warriner,* for appellee.

The almost universal rule laid down by the courts in the construction of exemption statutes is that they are to be liberally. construed in favor of the right of exemption.   *Berg* v. *Baldwin,* 31 Minn., 541 (12 Am. & Eng. Ency. Law [2d ed.], 76, note 1).

What, then, is a work horse under these exemption statutes?

(*a*) "An animal of the horse kind which can be rendered fit for service as well as one of mature age and in actual service." Black's Law Dict., 1245.

(*b*) "Under St. 1893, sec. 2844, exempting 'one yoke of work oxen,' a two-year-old steer and a two-year-old bull which have been yoked together a few times and are being kept by the owner for work oxen are within the intent and purpose of the statute." *Nelson* v. *Fightmaster* (Okla.), 44 Pac. Rep., 213 (12 Am. & Eng. Ency. Law [2d ed.], 131, note 1).

(*c*) "Where a horse was claimed as exempt as a plow horse, the court instructed the jury that they might, without positive evidence, infer that the horse was a plow horse, and that if he was adapted to this business it was sufficient, without showing that he had been thus used; and it was held that the instruction was correct."   *Matthews* v. *Redwine,* 25 Miss., 99.

(*d*) "It will not do to limit the exemption to a horse that has actually performed service in a plow or cart; but we must understand the term 'work horse' to mean one that performs the common drudgery of the homestead—as to haul water, draw the plow, to carry the family to church, etc.—either under the saddle or in the traces.   It is not necessary that he should have performed this service; if he has performed part of it and is

intended as such drudge, it is quite sufficient to bring him within the exemption of the statute." *Noland* v. *Wickham* (Ala.), 44 Am. Dec., 435.

TRULY, J., delivered the opinion of the court.

Appellant, having a judgment against appellee, had an execution issued thereon.   The execution was levied on two horses. Appellee claimed that they were exempt by law from the levy of an execution.   This was the sole issue presented, and the case was submitted to the judge, a jury being waived, on an agreed statement of facts.   The statement is as follows:

"It is agreed that the two horses levied on, as shown by sheriff's return, are the only horses owned by the defendant, and that the defendant is the head of a family, and that his family consists of a wife and two children, the elder of whom is four and one-half years old, and that defendant is a citizen of Mississippi.   One of the said horses is a male horse, fourteen years old, named 'Red Bird,' and is defendant's regular buggy horse, and is safe for his wife to drive.   The other of the said horses is a mare, seven years old, named 'Nell Buttons,' and is a high-bred mare, safe for defendant himself to drive, but not safe for a woman to drive alone..   Defendant does not use Nell Buttons regularly for his family buggy horse, nor does defendant's wife ever drive her alone; but the defendant, interchangeably with his other horse, drives his wife and children behind Nell Buttons, but so drives Nell Buttons less than he does his other horse. Defendant is vice president of the Corinth Clothing Manufacturing Company, and interchangeably with his other horse, but less than he does his other horse, uses Nell Buttons to drive to and from his business, which is ten city blocks from his residence, being about one-half mile; but his custom is to drive Red Bird or some other horse.   Nell Buttons is used occasionally to make business trips for the W. T. Adams Machine Company, having made two such trips.   Defendant has several times, at

the request of his father-in-law, W. T. Adams, gone to Mr. Adams' farm, about one and one-half miles from town, to look after Mr. Adams' interests, and has driven Nell Buttons and Red Bird interchangeably on such trips. Defendant drives Nell Buttons alone to a two-wheel racing sulky cart more than he drives her in any other way. Defendant paid $250 for Nell Buttons, and says that there is no valuation on her now, for the reason that she is not for sale. Defendant states that he bought Nell Buttons to take the place of Red Bird. He bought Nell Buttons more than two years ago. Neither of said horses is ever used, except as aforesaid."

Upon this agreed statement of facts the trial court held the two horses to be exempt as "work horses," under Code 1892, § 1963, par. 9 (*a*).

The exemption laws of the state were enacted to prevent the unfortunate citizen having all the necessaries of life swept away and to preserve for him certain things reasonably necessary to enable him to earn a livelihood for himself and family. The sole purpose of all exemption laws is to protect the citizens of the state from being reduced by financial misfortune to absolute want, and to encourage industry and thrift and the building up of homes by placing beyond the reach of creditors the homestead and such tools, implements, or appliances as an honest, industrious man may require to prosecute his business, whatever his walk in life or his occupation may be. "Looking to the general scope and policy of our legislation on this subject, it seems to us reasonably apparent that it was intended to save the head of a family his instruments of productive labor." *Burgess* v. *Everett,* 9 Ohio St., 425. This is, to our minds, made absolutely manifest from a careful analysis of the chapter treating of "exempt property." The tools of a mechanic, the agricultural implements of a farmer, the implements of a laborer, the books of a student, the wearing apparel of every person, the libraries of all persons, and the instruments of surgeons and dentists, within a

stated value; the globes and maps of teachers—in each of these exemptions the same underlying principle is apparent. This is to secure to the citizen the implements, whatever they may be, necessary for him to have in the further prosecution of his daily occupation. So the other property specially reserved to each head of a family shows by the enumeration of the articles speci-fied that it is intended to secure only those things which are reasonably necessary for the support and sustenance of the family. Work stock, domestic animals and provender, wagon and buggy and harness, seed of different kinds for planting, pro-visions for the family, household and kitchen furniture to a certain amount—the articles exempted all properly fall within the category of the ordinary necessities of a comfortable home life.

If it be asked why the owners of these special objects should be singled out for legislative favor and an exemption granted them which does not apply to every class of property, we answer in the language of the supreme court of Ohio in a discussion of a similar subject: "But one reason can be found for it, as it seems to us, and that reason is readily deducible from an inspection of the entire statute, and of statutes then and still in force in relation to the same subject-matter. It was to enable the mechanic, the teamster, or the farmer, or whosoever else had these specified articles of property, and was using, or in good faith was intending to use, them as instruments of labor, as means of support for himself and the family of which he was the head, to. do so." *Burgess* v. *Everett, supra.* It must be noted that the statute does not exempt two horses of every char-acter and description, but only "work horses." The language of the clause is, "Two work horses or mules and one yoke of oxen," the plain intendment being that it is a work team which is exempted. This appears from the association of ideas and the collocation of words. Only "work horses" are exempted, because it is well known that there are other kinds of horses—

race horses and the like.    The exemption of two "mules," without any other descriptive words, is stated broadly, because all mules are recognized as work animals.    The same idea was expressed in our former statutes, where the exemption was of a "plough horse."    From this point of view it would appear that the head of a family, whether a farmer, liveryman, drayman, teamster, or engaged in any other of many similar occupations, would be entitled to hold as exempt "two work horses," used in the prosecution of his daily business and assisting him in earning a support for his family.

We recognize the generally accepted canon that, on account of their beneficent intent, all exemption laws are to be liberally construed, with the view of effectuating the legislative intent evidenced by the statute.    The extent and effect of this general principle of construction is well stated in *Hickok* v. *Thayer,* 49 Vt., 374: "The statute in question in this case should be given effect according to its true intent and meaning.    It should not be enlarged nor diminished in its scope and effect beyond that by judicial construction.    When it is said that such statutes should be liberally construed in favor of the debtor, it should not be meant nor understood that the debtor has any more claim to have it extended in his favor to cases that were not contemplated by the legislature than the creditor has to have it extended in like manner in his own favor.    The province of the court is exhausted when it has made an application of the law to the given case, answerable to the real meaning and intent of the law.    Such is the idea in all that has been said on the subject in the cases." We are willing to give the very broadest possible construction compatible with reason and justice to all statutes devised and intended to protect the unfortunate from the rapacity of their creditors, and to insure the citizens of our state from being reduced to abject poverty or deprived of the things reasonably necessary to be used for the successful prosecution of their varying occupations.    Nevertheless, we can by no fair construction

of this statute persuade ourselves that it was the purpose of the legislature to enable a debtor, situated as is the appellee in this case, to screen himself behind a beneficent statute and to convert that statute into a refuge by which he can defeat the payment of his just debts by investing his money in horses used solely for the convenience of his family and his own personal pleasure. We must conclude that the legislature employed the term "work horses" advisedly. We must give force to the law as written.

By no fair construction can it be held that the term "work horses" embraces animals of the description and employed in the manner of those involved in this controversy. The exemption laws were intended to give the unfortunate man an opportunity to make an honest livelihood, but they were not intended to allow any one to defraud his creditors by devoting his money to the purchase of high-bred horses used for speeding or racing purpose. "If a contrary construction of this provision were to prevail, a farmer in failing circumstances might invest his whole estate in two valuable stallions or race horses, worth $10,000 or $20,000 each, and with no intention whatever to use them for farming purposes, and by claiming them as exempt from execution might defraud his creditors, under color of law, to a large amount. The benevolent design of the statute might thus be diverted to purposes of the grossest fraud." So said the supreme court of California in *Robert* v. *Adams,* 38 Cal., 383 (99 Am. Dec., 413), in construing a statute which exempted "two horses," without descriptive or limiting words. . "The intent of this was, not to give an absolute or unqualified right to all persons to keep two horses for every purpose, and thereby to allow, under cover of such exemption, hundreds and thousands of dollars to be invested in fast or sporting horses, but to limit the exemption of horses to such persons as kept and used them for a team, and with a limitation as to value." *Mundell* v. *Hammond,* 40 Vt., 647; *Burgess* v. *Everett, supra; Murphy* v. *Harris* (Cal.), 19 Pac., 377. The expression "work horses" was used in the statute in

its ordinary and accepted meaning, and must be given a reasonable, but fair, construction.   As strikingly applicable to the instant case, we quote from a case where a similar statute was under review:  " 'Team work' means work done by a team as a substantial part of a man's business, as in farming, staging, express carrying, drawing of freight, peddling, the transportation of material used or dealt in as a business.   This is clearly distinguishable from what is circumstantial to one's business, as a matter of convenience in getting to and from it, or as a means of going from place to place to solicit patronage, or to settle or make collections, or to see persons for business purposes.   It is plainly distinguishable from family use and convenience, pleasure, exercise, or recreation."   *Hickok* v. *Thayer, supra.*

It must be noted, too, that in the instant case the horses in question are used solely for the convenience or pleasure of appellee and his family, and are in no true sense employed as "work horses."   They are not used to perform the common drudgery of the homestead, and seem to be employed in no useful domestic service.   It would, of course, be convenient for appellee to have a fast horse to drive daily to his office, or a stylish outfit in which to drive his wife for pleasure; but those pleasures and conveniences cannot be enjoyed at the expense of his creditors.   The horses in question are in no sense either necessary or in fact used to assist appellee in earning an honest support for his family or in any way used as "work horses," and are, therefore, not exempt from execution under Code 1892, § 1963.   We are duly alive to the difficulty, if not impossibility, of framing any fixed rule which would prove invariably just in every case.   Many instances may arise in which it will be difficult to mark out any well-defined line of distinction to determine the question of exemption.   Such cases must be decided upon their own peculiar facts.   Suffice it to state here that, if the animals in question are devoted solely to the convenience and pleasure of the owner or his family, they cannot be denominated,

within the purview of the law, "work horses," and will not be exempted as such.

It must not be understood, from what we have heretofore said, that we intend in any wise to infringe upon the provisions of Code 1892, § 1971, granting certain privileges to householders having a family and residing in a municipality, or to modify the construction placed upon that statute by previous adjudications of this court.    We adhere to the judicial interpretation that the exemptionist dealt with by that section can make a selection according to the dictates of his own judgment.    But the agreed statement of facts in this case leaves it doubtful whether appellee is entitled to the exemption provided by sec. 1971, and we say this much simply to avoid the possibility of misconception of our true decision.

*Reversed and remanded.*