[Civ. No. 5215.   Third Appellate District.—March 29, 1935.]

THE PEOPLE, Appellant, v. AGNES E. THOMPSON et al., Respondents.

U. S. Webb, Attorney-General, and Neil Cunningham, Deputy Attorney-General, for Appellant.

H. L. Preston, J. W. Kingren and Wayne P. Burke for Respondents.

THE COURT.—This appeal involves the correctness of a judgment of the trial court dismissing an action in eminent domain, in which action the plaintiff sought to take from the defendants certain of their property known as the "Hargrave Ranch", situate on the Mendocino coast in Mendocino County, and add the same to the State Park System in Mendocino County known as "Russian Gulch State Park". In the eminent domain action the plaintiff had judgment for the condemnation of the property. The cause was tried by a jury, and the value of the property fixed at $3,500. Severance damages were allowed in the sum of $50. The court made its findings and entered judgment on the twenty-first day of August, 1933. The defendants' cost bill in the sum of $568.45 was allowed by the court.

On the nineteenth day of August, 1933, the plaintiff filed an affidavit seeking the extension of time of payment provided for in section 1251 of the Code of Civil Procedure. This affidavit was simply filed with the clerk of the court but was never called to the attention of the court, and no order of the court was ever made thereon allowing the extension of time specified in the section of the Code, *supra*. The award not having been paid, the defendants, on the ninth day of October, 1933, filed a notice of motion to dismiss the action in eminent domain, pursuant to the provisions of section 1255a of the Code of Civil Procedure.

The following questions are tendered for our consideration upon this appeal:

1st. Does the filing of an affidavit, without any hearing had thereon, or action by the court having jurisdiction of the eminent domain proceedings, automatically extend the time of payment one year?

2d. Was the affidavit filed in behalf of the plaintiff sufficient in substance?

3d.  Is the affidavit mentioned in section 1251, *supra*, conclusive, or may the defendant offer evidence to contradict the same?

4th.  Is that part of the section of the Code providing for an extension of time to certain litigants, to the exclusion of others, constitutional?

Section 1251, *supra,* so far as involved in this action, reads as follows: "In case the plaintiff is the State of California, or is a public corporation, and it appears by affidavit that bonds of said state or public corporation must be issued and sold in order to provide the money necessary to pay the sum assessed, then such sum may be paid at any time within one year from the date of such judgment; provided, further, that if the sale of any such bonds cannot be had by reason of litigation affecting the validity thereof, then the time during which such litigation is pending shall not be considered a part of the one year's time in which such payment must be made."

■  The language of this section does not specifically provide that the mere filing of the affidavit shall work an extension of time, nor does the section designate to whom it shall be made to appear that it is necessary to sell bonds. The language simply is: "and it appears by affidavit", etc. In connection with the true interpretation of this language we may mention that the section of the Code is absolutely silent as to any additional compensation being made to a property owner either by way of damages or interest on the award fixed by the jury on account of the delay for the period of one year in the first instance, or a still longer delay in the event of litigation affecting the validity of the bonds to be issued.

While the argument is advanced in this case that the mere filing of an affidavit automatically works an extension of time, there is no explanation offered as to whom the facts are to be made to appear in the affidavit filed in the proceedings. It will not be questioned that the court, and not a litigant, has jurisdiction of the action, and is the only identity created by law having power to make and direct the entry of orders affecting the action or proceeding pending before it. The litigant may present facts, as in this case, by an affidavit, but it must be made to appear, to some authority. What might appear to be unquestionably

sufficient to a litigant might appear to the court as having no evidentiary power whatever. It does not seem reasonable that the legislature ever intended that by the mere filing of an affidavit which appeared sufficient to the affiant therein, that a cloud should be placed upon the title of one's property for the period of one year or more. Such an interpretation divests the court of its authority, and places it in the power of someone acting in behalf of the plaintiff.

A somewhat similar question was before this court in the case of *Hurley* v. *Lake County,* 113 Cal. App. 291 [298 Pac. 123], where it was claimed that the mere filing of an affidavit in the action without the introduction of the affidavit as testimony, or calling the attention of the court thereto, was sufficient.

In holding the mere filing of an affidavit in an action without presenting the same to the court in testimony, unavailing, this court said: ''The respondents call our attention to section 2009 of the Code of Civil Procedure, which permits the use of affidavits in proving the fact of notice being mailed. The respondents' reference to this section is well founded so far as the claim is made that affidavits of giving notice may be admitted in evidence to prove the fact of notice having been given, but the unfortunate predicament in this case, so far as respondents are concerned, is that the notice and affidavit were not admitted in evidence. All that the transcript shows as certified to as being full and correct by the trial court is that one of the respondents' counsel stated that there was an affidavit filed in the cause of notice having been mailed. The contention is now made that the court takes judicial notice of its own records. This contention is true, but the affidavit and notice referred to are not a part of the records of the court, are not papers of which a court takes judicial notice until they have been properly introduced in evidence, and if they are sufficient in form and substance to prove the fact of notice being given, then and in that case the court is warranted in acting thereon, but not until such proof is made. The filing of an affidavit, among the papers of a cause, no more proves any fact in controversy than would the filing of a deposition which is not introduced in evidence be proof of the matters to which the witness has deposed.''

The mere filing of an affidavit with the clerk is not the presentation to the court of any of the matters contained

therein, and we find no logical reason for holding that facts are made to appear simply by such filing, or that the appearance of the necessity for an extension of time can be determined or adjudicated by any other than the court in which the action is pending.

While the section of the Code which we have set forth does not provide, in so many words, for a hearing, we think that the rule of law that no one shall be deprived of his property without due process of law, necessitates a hearing before the court as to the merits of the affidavit, and whether a showing is sufficiently made to justify the court in allowing what may be a year or a longer extension of time in which to make payment of the award. No provision is made, as we have stated, for allowing interest upon the award, on account of the delay, or for allowing any additional damages. However, during the extension of time, a cloud is placed upon the title and the owner is deprived of the power of making sale thereof in the event of a more advantageous or valuable offer being made therefor, or in the event that changed economical conditions render the property more valuable. This enforces again the thought that the prohibition of such right and the placing of a cloud upon the title to one's property should not be left arbitrarily, or otherwise, to the opinion or conclusion of a litigant, or anyone simply making an affidavit in behalf of the litigant.

The language found in 5 California Jurisprudence, page 865, section 18, we think directly applicable, to wit: ''The purpose of the constitutional guaranty as to due process is to exclude from every branch of the government arbitrary and unreasonable exertions of power, and to give protection against arbitrary interference with rights. It is a restraint upon all departments of government—legislative, executive and judicial. The essential rights of the individual cannot be taken away by any mere declaration of the legislative will. Guaranty is a direct prohibition upon the legislature from passing any law . . . taking away their liberty or divesting them of property, whether real or personal, except by a due and regular proceeding shall, only upon the judgment of a court of justice of competent jurisdiction, render any proceedings in which such person shall have had his rights fairly adjudicated in accordance with the established rules of law,

applicable to such cases.'' The meaning of the words "due process of law" is clearly expressed in the following quotation taken from the case of *City of Los Angeles* v. *Oliver*, 102 Cal. App. 299 [283 Pac. 298] : "As applied to judicial proceedings the phrase 'due process of law' imports an orderly proceeding adapted to the nature of the case in which a person is accorded an opportunity to be heard and to defend, enforce and protect his rights (*County of Santa Clara* v. *Southern Pac. Ry. Co.*, 18 Fed. 385). It has the same meaning as the expression 'by the law of the land', as used in Magna Carta. (*Den* v. *Hoboken Land etc. Co.*, 18 How. (U. S.) 272 [15 L. Ed. 372].) It means a process which, 'following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought.' (*Hagar* v. *Reclamation District*, 111 U. S. 701 [28 L. Ed. 569, 4 Sup. Ct. 663, 667; see, also, Rose's U. S. Notes].)'' This implies a hearing whenever one's right to payment within thirty days after the entry of judgment in eminent domain proceedings is to be deferred for the period of one year, or for any longer time. The time for fixing the value of the property is designated in the statute, and when the judgment is entered, the owner of the property is entitled to payment within thirty days if the proceedings are not abandoned. If abandoned, he is entitled to his costs, and then to the exclusive use of the property and the unhampered privilege of making disposal thereof. On the other hand, if the property is actually taken, the owner is entitled to the amount of the award in order that he may use the same either in his own business or in placing the award on interest. In either case it is a pecuniary right which is valuable to the owner of the land sought to be condemned, and he cannot arbitrarily be deprived of such right.

In the case of *Ekern* v. *McGovern*, 154 Wis. 157, 245 [142 N. W. 595, 619, 620], reported, also, in 46 L. R. A. (N. S.) 796, the court voices the law in the following pertinent language: ''Under the general and special guarantees as well, no right of an individual valuable to him pecuniarily or otherwise, can justly be taken away without its being done

conformably to those principles of natural justice which afford due process of law and the equal protection of the law, . . . and a fair hearing and judgment upon the evidence, . . . That the protection of due process of law extends to rights, in the broadest sense of the term, has always been recognized here. . . . It excludes all mere arbitrary dealings with persons or property. It excludes all interference, not according to the established principles of justice, one of the most worthy of them being the right and opportunity for a hearing to meet opposing evidence and oppose with evidence, according to the established principles of fair investigation to determine the justice of the case.''

That due process of law requires notice to be given, and an opportunity to be heard, before anyone can be deprived of his rights either as to person or property, is considered at length in the case of *Violett* v. *Alexandria,* 92 Va. 561 [23 S. E. 909, 913, 53 Am. St. Rep. 825, 31 L. R. A. 382]. In that case a special assessment was levied by executive officers, without notice or opportunity to property owners to be heard. In answer to the contention that notice was unnecessary the court said: ''But it is clear to my mind that this does not sustain appellee's contention, as the court there declares, in plain language, that whenever the laws there discussed provide a mode for contesting the charge imposed in a court of justice, with such notice to the person, or such proceedings in regard to the property, as are appropriate to the nature of the case, then they do not deprive a person of his property without due process of law; thus clearly making the constitutionality of the law dependent upon its giving notice to the party to be affected, and an opportunity of contesting the charge. In every case that I have been able to examine which has gone to the Supreme Court of the United States, and in which the question under consideration was considered, that court has upheld the validity of the laws upon the ground that notice and hearing had been provided for, or held the laws to be unconstitutional and void because notice to the party to be affected and an opportunity to be heard were not provided for. (*McMillen* v. *Anderson,* 95 U. S. 37 [24 L. Ed. 335]; *Davidson* v. *New Orleans,* (96 U. S. 97 [24 L. Ed. 616]), *supra; Hagar* v. *Reclamation Dist. No. 108,* 111 U. S. 701 [4 Sup.

Ct. 663, 28 L. Ed. 569]; *Spencer* v. *Merchant*, 125 U. S. 345 [8 Sup. Ct. 921, 31 L. Ed. 763]; *Walston* v. *Nevin*, 128 U. S. 578–582 [9 Sup. Ct. 192, 32 L. Ed. 544–546]; *Lent* v. *Tillson*, 140 U. S. 316 [11 Sup. Ct. 825, 35 L. Ed. 419]; *Paulsen* v. *Portland*, 149 U. S. 30 [13 Sup. Ct. 750, 37 L. Ed. 637]; *Pittsburgh C. C. & St. L. R. Co.* v. *Backus*, 154 U. S. 421 [14 Sup. Ct. 1114, 38 L. Ed. 1031].) But for extending the discussion of this question to too great a length, if such is not already the case, innumerable decisions of the courts of other states might be cited and reviewed, wherein assessments for local improvements were held to be void, and were vacated, because made, levied, and confirmed without any notice to property owners affected." See, also, *State* v. *Taylor*, 27 N. D. 77 [145 N. W. 425], and *Carstens* v. *Pillsbury*, 172 Cal. 572 [158 Pac. 218].

If entitled to notice and hearing as to the sufficiency of the affidavit to authorize a court to extend the time of payment for a year or more and thus place a cloud upon the title to one's property, it follows as a matter of course that the property owner in such an instance has a right to controvert the showing made by the affidavit, and in this manner protect his property rights. The affidavit filed in behalf of the plaintiff, so far as necessary to be considered herein, is in the words and figures following:

"William E. Colby, being first duly sworn, deposes and says: That he is a member and chairman of the State Park Commission of California; that he is familiar with the condition of 'The California State Park Fund of 1927' from which fund the award in condemnation in the above entitled proceeding will be paid; that there is not sufficient money in said fund or in any other fund available for that purpose with which to pay the award in the above entitled proceeding, and that it will be necessary to issue and sell bonds of the State of California under and pursuant to the California State Park Bonds Act of 1927 (Stats. 1927, p. 1480) in order to provide funds with which to pay the said award. Affiant therefore makes this affidavit for the purpose of extending the time one year within which, after the entry of final judgment in the above entitled proceeding, the sum of money assessed and ordered to be paid the above entitled defendants by plaintiff may be paid, as is provided in Section 1251 of the Code of Civil Procedure."

The sufficiency of this affidavit is challenged by the defendants, and testimony controverting the conclusions therein stated was admitted by the trial court. We may admit that the affidavit is sufficient in form, but it does not appear to us that any facts are therein stated other than the conclusions of the affiant. The affiant does state that he is familiar with the condition of the California State Park Fund of 1927, but there are no other facts stated as to the condition of that fund, or how much money that fund contains, whether any allocations have been made therefor, and if so, of what they consist. The opinion is expressed in the affidavit that there is not sufficient money in the fund, or in any other fund, available for the purposes of paying the award. That, of course, is a statement only of the conclusion of the affiant. Again, we repeat, that is not a statement of the money in the fund, or of what moneys are available upon which the court could draw a conclusion or make an order suspending the rights of the defendants for the period of at least one year, or perhaps longer.

The statement is then made that it will be necessary to sell bonds of the State of California to pay the award. Without any statement as to the amount of money in the California State Park Fund of 1927, the court could not conclude that a suspension of time was necessary in order that bonds might be sold. The opinion of the affiant, as expressed in the affidavit, may or may not have been correct, but without any facts stated in the affidavit upon which the opinion of the affiant was expressed, it does not appear that anything of substance was presented justifying the court in making an order extending time and suspending the rights of the defendants, even though the affidavit had been called to the attention of the court and a hearing thereon had.

That an affidavit which sets forth only conclusions or opinions of the affiant is insufficient, is sustained by a long list of cases. The rule as to the sufficiency of affidavits is clearly stated in 2 C. J., page 350, as follows: ''Facts should be stated positively and with legal definiteness and certainty. . . . The statement in an affidavit of mere matters of opinion, or of legal conclusions is not sufficient. The facts on which such conclusions are based should be set forth so that the court may draw its own inferences. Thus, where a

remedy is given by statute in certain specified cases, an affidavit is not sufficient which merely alleges that the case is one of those mentioned in the statute, without stating the facts from which such conclusions may be drawn.''

Likewise, in 1 California Jurisprudence, page 670, the rule is set forth as follows: "An affidavit which merely repeats the language or substance of the statute is not ordinarily sufficient. The statute cannot go into details, but is compelled to content itself with a statement of the ultimate facts which must be made to appear, leaving the details to be supplied by the affidavit, from the circumstances of the particular case. . . . The ultimate facts of the statute must be proved, so to speak, by the affidavit, by showing the probatory facts upon which the ultimate fact depends. These ultimate facts are conclusions drawn from the existence of other facts, to disclose which, it is the special office of the affiant.'' Thus, the affidavit in the instant case should have disclosed the facts necessary to give the court jurisdiction to extend the time of payment.

As said in 10 California Jurisprudence, page 385, the statutory power of taking property without the owner's consent is one of the most delicate exercises of governmental authority, and there must necessarily be a strict observance of the substantial provisions of the law.

█ A further rule by which the sufficiency of an affidavit may be tested is set forth in 1 R. C. L., page 771, to wit: "The true test of the sufficiency of an affidavit is whether it has been drawn in such a manner that perjury could be charged thereon if any material allegation contained therein is false.'' It is evident that an affidavit which simply states opinions and conclusions does not come within this rule. To the same effect is the case of *People* v. *Findley,* 132 Cal. 301 [64 Pac. 472].

In considering the question of the sufficiency of an affidavit entitling one to the benefits of the exemption laws, the court, in *Petrich* v. *Francis,* 83 Cal. App. 72 [256 Pac. 444], used the following language: "One who claims the benefit of exemption laws must bring himself within their spirit (25 Cal. Juris. 12) or, in other words, he 'must show that he belongs to one of the classes mentioned' in them (*Swanz* v. *Clark,* 71 Mont. 385 [229 Pac. 1108]). Again, the burden is upon him to show that he is entitled to the exemption

(*Murphy* v. *Harris,* 77 Cal. 194 [19 Pac. 377]). These rules necessarily mean that one who contends for an exemption must establish his right by evidence, by facts. The affidavit of Santich merely follows the language of the statute and states nothing but conclusions of law. Such an affidavit proves nothing. (1 Cal. Juris. 669, 670.)''

Other cases might be cited, but the foregoing set forth the rules by which the sufficiency of an affidavit may be determined.

We find nothing in any one of the several acts relating to the creating of the State Park System, making the affidavit referred to in section 1251, *supra,* conclusive evidence of the matters therein set forth, even though such affidavit be considered as setting forth sufficient facts to justify the order of the court extending time of payment and suspending the right of the property owner to the damages awarded, and placing a cloud upon his title for at least one year. Three separate acts were passed by the legislature in the creation of the State Park System: Statutes of 1927, page 1477, Statutes of 1927, page 1479, and Statutes of 1927, page 1480. The first act relates to the creation of a Park System, gives power to expend money for the care, protection and supervision thereof; also authorizes the Commission to receive gifts of money or property to be used in extending the System. The second act authorizes the Department of National Resources, through the State Park Commission, to make surveys and determine what lands are suitable and desirable to be included within the State Park System. The last act, known as the ''State Park Bonds Act of 1927'', sets forth the procedure for the sale of bonds to acquire money for the purchase of lands to be included within the System. This act was approved by a vote of the people on November 6, 1928. The act contemplates that the State shall pay one-half of the cost of acquiring lands of the State Park System, and that donations of land or money shall be made sufficient in amount to match the moneys advanced by the State.

The lands involved in this action, the moneys to be expended, and the moneys shown to be on hand by the testimony introduced upon the hearing of the motion to dismiss, are so clearly set forth in an opinion filed by the learned

judge of the trial court that we incorporate the same herein as a part of the opinion of this court:

"It appears that the State Park Commission selected as a portion of the State Park System, two adjacent tracts in Mendocino County. One is known as the Johnson land, the other as the Hargrave land, the two to constitute a unit known as the 'Russian Gulch Project'. The owners of the Johnson land, with the approval of the State authorities, fixed the value of their property at $40,000.00, and an agreement was entered into whereby the Park Commission agreed to buy, and the owners to sell, the Johnson land for $28,500.00. The difference of $11,500.00 was deemed by the Park Commission as a donation to that extent. On December 15, 1932, the County of Mendocino, through its Board of Supervisors, entered into a contract with the State Park Commission whereby the county obligated itself to contribute $10,000.00 to the Russian Gulch Project. The sum was paid by the county, and $8,500.00 thereof was added to $20,000.00 realized from the sale of State Park Bonds, and the total of $28,500.00 paid to the owners of the Johnson lands. By this means, there was a compliance with that provision of the State Park Bond Act which requires that in no case shall the Park Commission purchase any lands unless one-half of the total value involved has been received by the Commission as a gift. The gift in this case was construed as a donation of land to the extent of $11,500.00 by the owners of the Johnson land, and $8,500.00 in cash provided by the Board of Supervisors of Mendocino County. The $1,500.00 remaining of the $10,000.00 provided by the County of Mendocino was placed by the Park Commission in its Contingent Fund to be used for 'matching purposes' against a like sum to be provided by the State, to complete the Russian Gulch Project.

"It is admitted that the State did not pay the award within the thirty day period. The question then arises whether it could have done so. The defendants are entitled to $3550.00. Of this sum, not more than one-half, or $1775.00, could be paid from the State Park Bond Fund of 1927. The balance of $1775.00, to match the money provided by the State, was required to be paid in money or lands derived from other sources, and of this latter sum there was to the credit of this project the sum of $1500.00

on deposit to the credit of the State Park Contingent Fund, which sum had previously been provided by the county. Assuming that the remaining $275.00 for matching purposes was provided from some other source, it was incumbent upon the State to provide only the sum of $1775.00 to close the transaction. The testimony of the State Controller shows that on the 19th day of July, 1933, there was on hand in the State Park Bonds Fund of 1927, the sum of $116,567.86, and that this sum remained there intact until August 26, 1933, when $100.00 was withdrawn; in other words, at all times between July 19th and August 26, 1933, the actual cash on hand was $116,567.86. The plaintiff sought to show that this money was not available for payment of the award here for the reason that the State Park Commission had allocated this amount to other projects. While it may be conceded that the Commission had made contracts involving the expenditure of $82,013.96 of this money on hand, there yet remained $34,553.90 in the State Park Bond Fund of 1927 from which the $1775.00 due defendants might have been paid. Mr. Colby attempted to show a commitment by the State Park Commission that would consume this $34,553.90. He testified that this sum was intended as a part payment on $70,000.00 that the Commission had agreed to pay to Walter D. Bliss on the 'Lake Tahoe State Park project'. It is significant, however, that on the 15th day of September, 1933, the Commission requested the sale of bonds to the amount of $70,000.00 to cover this particular item. If the Commission required $70,000.00 to carry out the Bliss contract, and had $34,553.90 on hand in cash to apply on this payment, why should it still require bonds to the extent of $70,000.00 to be sold? The answer must be that the $34,553.90 was not to be used on the Bliss contract, and if it was not so to be used, it was available for other purposes, among them, to pay the Hargrave award."

In addition to the objections urged in the court below, respondents contend that the provisions of section 1251, *supra*, collected herein, give certain litigants special privileges, and is therefore unconstitutional. As what we have set forth herein appears to us determinative of this opinion, following the rule that constitutional questions will not be considered unless necessary to the determination of the cause, we express no opinion on that subject.

The resolution of the State Park Commission adopted on the fifteenth day of September, 1933, relative to the condition of the State Park Fund as of that date, cannot be considered for any purpose, as supplementing or adding to an affidavit filed on the nineteenth day of August, 1933. While the appellant has argued the alleged serious consequences of the decision of the trial court upon the validity of bonds ordered to be sold on or about the fifteenth day of September, 1933, such questions are not involved herein, and do not call for the expression of any opinion on the part of the court. The validity of the bonds, we may add, however, depends upon the facts as they appeared on the fifteenth day of September, 1933, at the date of the passage of the resolution just referred to; and not upon the sufficiency or insufficiency of the affidavit filed on behalf of the appellant in the eminent domain action. Nor do we decide that the court would have jurisdiction to go behind that resolution in determining its accuracy. What we do hold herein is that the right to an extension of time not having been shown, the defendants were entitled to a dismissal.

The judgment is affirmed.