[Civ. No. 10475. First Appellate District, Division One.—July 26, 1938.]

A. BERTOZZI, Appellant, v. JOHN SWISHER, Respondent.

R. A. Rapsey and John E. Manders for Appellant.

F. E. Hoffmann for Respondent.

KNIGHT, J.—A race horse belonging to defendant was attached by plaintiff in an action to collect an alleged indebtedness of $1841.20; and on defendant's motion the trial court dissolved the attachment upon the ground that under the provisions of section 690.7 of the Code of Civil Procedure said horse was exempt from attachment. From the order so made plaintiff appeals.

The provisions of section 690.7 here involved provide for the following exemptions: "Two horses, two oxen or two mules, and their harness, and one cart or wagon, one dray or truck, one coupe, one hack, or carriage, for one or two horses, by the use of which a cartman, drayman, truckman, huckster, peddler, hackman, teamster or other laborer habitually earns his living. . . . " The sole evidence upon which the motion was heard and determined consisted of defendant's affidavit. It was therein averred that the writ was levied "upon a certain five-year old horse named 'Fritter Circle'; that said 'Fritter Circle' is a race horse and is the sole means of support of defendant . . . ; that said defendant . . . is a laborer who habitually earns his living from the proceeds, purses and monies earned by racing said horse; that while said horse is held by virtue of said writ of attachment . . . said defendant is precluded from training said horse and keeping said horse in condition for racing purposes; that as a result thereof said defendant is deprived of earning a livelihood."

Under well-settled rules a debtor claiming the benefit of the exemption laws must bring himself within the spirit thereof; that is to say, the burden is upon him to show he is entitled to the exemption (*Murphy* v. *Harris*, 77 Cal. 194 [19 Pac. 377]; *People* v. *Thompson*, 5 Cal. App. (2d) 655 [43 Pac. (2d) 600]); and it is our conclusion that the facts averred in defendant's affidavit are legally insufficient to establish a case of exemption within the letter or the spirit of the statute.

As said in many of the earlier decisions, some of which are hereinafter cited, the fundamental reason for the enactment of exemption laws is to protect a person, whatever his occupation might be, from being reduced by financial misfortune to abject poverty; therefore, to accomplish that end and in order to encourage industry and thrift, laws of that type have been framed which place beyond the reach of creditors not only the debtor's home but also various kinds of personal property reasonably necessary for him to have in order to earn a living for himself and his family; and from the beginning, among the exemptions thus granted are to be found certain domestic animals, including a limited number of horses. However, as pointed out by those earlier cases, horses so exempt are intended in good faith to be used as instruments of husbandry or labor (*Burgess* v. *Everett*, 9 Ohio St. 425; *Hickok* v. *Thayer*, 47 Vt. 372; *Tishomingo Sav. Inst.* v. *Young*, 87 Miss. 473 [40 So. 9, 112 Am. St. Rep. 454, 6 Ann. Cas. 776, 3 L. R. A. (N. S.) 693]); in other words, they must be work horses (2 Freeman on Executions, 3d ed., sec. 229); and no case has been cited by defendant from any jurisdiction wherein it has been held that horses used solely for racing purposes are exempt; nor has he called to our attention any authority declaring even by implication that exemption laws should be so construed or extended.

Quite to the contrary, it would appear that whenever by way of analogy or argument the subject has been mentioned by the courts, it has been stated that it was never contemplated that race horses should come within the purview of such laws. (See *Tishomingo Sav. Inst.* v. *Young, supra,* and cases cited therein; also notes thereto in 6 A. & E. Ann. Cas. 779, and 3 L. R. A. (N. S.) 693.) Hence in Ruling Case Law (vol. 11, p. 520) the rule is stated as follows: "A statute exempting a horse by the use of which the debtor earns his living, or which is necessary to enable him to carry on his business or occupation, does not include a horse bought for speculative purposes, or one used solely for racing or for breeding purposes . . . "; and apparently such was the view taken by the Supreme Court of this state in the early case of *Robert* v. *Adams*, 38 Cal. 383 [99 Am. Dec. 413], in discussing the question then before it.

■ Defendant contends, however, that because of the uncontradicted averment in his affidavit that he is a "laborer" who habitually earns his living by the use of said horse, he is entitled to the exemption under the literal wording of the statute, regardless of the fact that the horse is used by him exclusively for racing purposes. We are unable to sustain such contention. The prevailing rule is that "one who contends for an exemption must establish his right by evidence, by facts", and that an affidavit which merely follows the language of the statute states nothing more than a conclusion of law and proves nothing. (*Petrich* v. *Francis,* 83 Cal. App. 72 [256 Pac. 444].) Here no evidentiary facts are set forth in defendant's affidavit in support of the conclusion that he is a "laborer". True, he avers that while the horse is under attachment he is precluded from training and keeping him in condition for racing purposes, but nowhere does he aver that he personally performs any part of the work necessary to be done in training the animal. Consequently, for aught the affidavit shows, all such work is done by others; and as said in *Brusie* v. *Griffith,* 34 Cal. 302 [91 Am. Dec. 695], the words "other laborer" as used in the statute mean one who labors by and with the aid of the animal claimed as exempt.

■ However, irrespective of any technical construction of the averments of said affidavit, it is quite obvious that under the authorities already cited and for the reasons hereinafter given, the legislature never intended that the term "or other laborer" as used in said statute should be so broadened as to include the owner of a race horse, even though he personally performed the work of training the animal.

In this respect it is to be noted from said code section that every person who habitually earns his living by the use of a horse is not entitled to claim the animal as exempt; that the benefits of said section are bestowed only upon those engaged in the class of occupations enumerated therein, namely, "cartman, drayman, truckman, huckster, peddler, hackman, teamster". Therefore, under fixed rules of statutory construction, the term "or other laborer" immediately following the designation of such occupations, must be confined to persons performing the same class of labor as those designated. (25 Cor. Jur., p. 41.) In other words, as held by the Su-

preme Court of the state of Nevada in construing an exemption statute copied practically *verbatim* from ours, "The legislature evidently intended that the construction to be given to these words (other laborer) should be confined to other laborers *ejusdem generis* with those named"; and continuing, the court went on to say: "Language, however general in its form, when used in connection with a particular subject-matter, must be presumed to be used in subordination to that matter, and should be construed and limited accordingly." And in that case the court denied the benefits of the statute to a livery stable keeper who personally performed the labor of driving his own team in carrying persons about town for a consideration, upon the ground that his occupation as livery stable keeper did not come within the general classification of those enumerated by the statute. (*Edgecomb* v. *His Creditors,* 19 Nev. 149 [7 Pac. 533].) Far stronger reasons exist for holding that exemption statutes were never intended to include the owner of horses used exclusively for professional racing, because, as suggested in *Robert* v. *Adams, supra,* if a contrary construction were to prevail, any person in failing circumstances might invest his whole estate in two valuable race horses, each worth ten or twenty thousand dollars, or more, and then by claiming them as exempt from execution defraud his creditors under the color of law to a large amount, and thus pervert the benevolent design of the statute. To the same general effect may be cited also the language used in the case of *Mundell* v. *Hammond,* 40 Vt. 641, which, like *Robert* v. *Adams, supra,* is quoted approvingly in *Tishomingo Sav. Inst.* v. *Young, supra,* wherein the court went on to say that the intent was not to give an absolute or unqualified right to keep two horses for every purpose and thereby allow under cover of exemption hundreds and thousands of dollars to be invested in fast or sporting horses.

Finally, it may be stated that although the exemption law of this state, which originally was made part of the old Practice Act, has twice been completely reenacted, first, at the time of the adoption of the codes when it was embodied in section 690 of the Code of Civil Procedure, and again, in 1935, when the several subdivisions thereof were segregated and reenacted into separate code sections, on neither of those subsequent occasions did the legislature at-

tempt to make any material change in the wording of that portion now constituting section 690.7. Therefore, its omission to make any material alteration therein may safely be taken as a confirmation by the legislature of the judicial construction theretofore placed on said provisions by the early decisions, and as proof that it had no intention of widening the scope thereof so as to extend the benefits of the exemptions therein enumerated to every person, regardless of his occupational pursuit, who claimed that he was earning his living by the use of the property therein exempted.

The order is reversed.

Tyler, P. J., and Cashin, J., concurred.